STATE v. LONNIE BURNETT and ERNEST BURNETT.

(Filed 31 March, 1920.)

**1. Courts—Juvenile Courts—Delinquent Children—Guardian and Ward— Constitutional Law.**

Chapter 97, Laws of 1919, entitled "An act to establish Juvenile Courts" is designed and intended to take over in behalf of the State, the guardianship of delinquent and dependent children under sixteen years of age, specified and described in the statute where it is clearly established that the care and control of the parents or others having present charge of such children is inadequate and harmful, and the welfare of the child and the best interest of the State clearly requires it, and the same is held to be a constitutional and valid enactment.

**2. Same—Statutes—Interpretation.**

Under said statute and in case of children under the age of sixteen years charged with being delinquent by reason of the violation of the criminal laws of the State, the act provides and intends to provide in effect:

(a.) That children under fourteen years of age are no longer indictable as criminals, but must be dealt with as wards of the State, to be cared for, controlled and disciplined with a view to their reformation.

(b.) That in case of children between fourteen and sixteen years of age, and as to felonies, whenever the punishment cannot exceed ten years, they may if the instance requires it, be bound over to the Superior Court to be prosecuted under the criminal law appertaining to the charge.

(c.) That in case of children from fourteen to sixteen years of age and as to felonies, whenever the punishment is ten years and over they are amenable to prosecution for crime as in case of adults.

**3. Courts—Juvenile Courts—Jurisdiction—Statutes.**

The exception in our statute creating the juvenile court, ch. 97, Laws of 1919, that a case may not be investigated on the petition of the parent, etc., when the custody of the child is committed to an institution controlled by the State, applies to the action of the juvenile court, and does not limit the Superior Court in its general jurisdiction over matters of law and equity, in making, upon proper application and appropriate writs, inquiry and investigation into the status and condition of children disposed of under the statute, or in rendering such orders and decrees therein as the rights and justice of the case or the welfare of the child may require.

**4. Courts—Juvenile Courts—Crimes—Constitutional Law—Statutes.**

Our constitution established the only punishment for crimes recognized by the law of this State, and states, Art. II, sec. 2, that the object of punishment is not only to satisfy justice but to reform the offender and thus prevent murder, arson, burglary and rape, and those punishable with death if the General Assembly shall so enact, and the 4th section of the Bill of Rights admonishes against cruel and unusual punishment, and it is within the discretionary authority of the Legislature, with these limitations, to pass upon, by proper enactment, the question of crime and its punishment.

**5. Same—Common Law—Wayward Children.**

Our Constitution, in conferring legislative authority upon the General Assembly, included the legislative powers of the English Parliament or of other governments of a free people, except such as restrained by express. constitutional provision or necessary implication therefrom, and there being no constitutional inhibition, either state or federal, and delinquent, dependent, and wayward children being regarded in a peculiar sense as within the care and wardship of our State, the powers conferred by our legislature, ch. 97, Laws of 1919, creating a juvenile court, are constitutional and valid.

**6. Same—Trial by Jury.**

Ch. 97, Laws of 1919, creating a juvenile court, etc., does not deal with delinquent children as criminals, but as wards of the State, and undertakes to give them the control and environment that may lead to their reformation and enable them to become law-abiding and useful citizens, and a support and not a hindrance to the commonwealth, and the objection that the statute ignores or unlawfully withholds the right to a trial by jury, cannot be sustained.

**7. Courts—Juvenile Courts—Parent and Child—Jurisdiction.**

Parents, guardians, etc., must be notified and given an oportunity to be heard in proceeding in the juvenile courts under ch. 97, Laws of 1919, with the right to review in the Superior Court upon adverse judgment; and if the child is taken over by the State, they are allowed, on proper application at any time, to have their child brought before the Court, its condition inquired into and further orders made concerning it except where committed to a State institution and then they may apply directly to the Superior Court, thus giving full consideration to the family relation and parental rights.

**8. Courts—Juvenile Courts—Parent and Child—Custody of Child.**

The right of parents to the care and custody of their children is not absolute and universal and may be made to yield when it is clearly established under the provisions of the act to create juvenile courts, ch. 97, Laws of 1919, that the welfare of the child requires it. .

**9. Courts—Juvenile Courts—Crimes and Punishments—Felonies—Capital Offense—Criminal Law.**

The act establishing a juvenile court, ch. 97, Laws of 1919, only operates to extend the conclusive presumption of the age, existing at common law, at which a child is not capable of committing crime, and thereunder a child of ten years of age may not be convicted of committing a capital offense.

**10. Courts—Juvenile Courts—Statutes—Repealing Statutes.**

Ch. 97, Laws of 1919, establishing a juvenile court, repeals ch. 122, Laws of 1915, and *S. v. Newell*, 172 N. C., p. 933, has no application.

INDICTMENT for murder heard on motion by defendants to quash the Bill before his Honor, *W. M. Bond, Judge,* at November Term, 1919, Superior Court Bertie County.

The bill of indictment, charging defendants in formal terms with the murder of Ludelle Hyman, deceased, contained on its face the averment that both of defendants were under 10 years of age, and it being admitted on the hearing that said defendants were under the age of ten, the court gave judgment that the Bill be quashed and defendants remanded to the Juvenile Court to be dealt with pursuant to law, being of opinion that, under the act of the General Assembly, establishing said courts, children of that age are exempt from prosecution as criminals.

The State, having duly excepted, appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*No counsel for defendant.*

HOKE, J. The General Assembly of 1919, passed an act entitled "An act to create Juvenile Courts in North Carolina," ch. 97, Laws 1919, designed and intended in behalf of the State to take over the guardianship of delinquent and dependent children under the age of 16 years when they come within the descriptive specifications of the law and it is established that the care and control of the parents, or others having present charge of such children, is inadequate and harmful and that the welfare of the child and the best interest of the State clearly require it. With this end in view, the statute, in sec. 1, makes provision as follows:

"Section 1. The Superior Court shall have exclusive original jurisdiction of any case of a child less than sixteen years of age residing in or being at this time within their respective districts—

. "(a) Who is delinquent or who violates any municipal or State law or ordinance or who is truant, unruly, wayward, or misdirected, or who is disobedient to parents or beyond their control, or who is in danger of becoming so; or

"(b) Who is neglected or engages in any occupation, calling, or exhibition, or is found in any place where a child is forbidden by law to be, and for permitting which an adult may be punished by law, or who is in such condition or surroundings or is under such improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of such child; or

"(c) Who is dependent upon public support, or who is destitute, homeless, or abandoned, or whose custody is subject to controversy.

"When jurisdiction has been obtained in the case of any child, unless a court order shall be issued to the contrary, or unless the child be committed to an institution supported and controlled by the State, it shall continue for the purposes of this act during the minority of the

47—179

child.  The duty shall be constant upon the court to give each child subject to its jurisdiction such oversight and control in the premises as will conduce to the welfare of such child, and to the best interests of the State."

In sec. 2, and for the administration of the law in its principal features, juvenile courts, as a separate part of the Superior Court, are established in all the counties of the State, the office of judge of such court to be filled by the clerk of the Superior Court of their respective counties, and, in later sections, special provision is made for establishment of juvenile courts in cities of 10,000 inhabitants or more, and also in cities of 5,000, this last being in the discretion of the governing body of the town, and where they are not county sites and have a recorder's court.   In sec. 4 it is required that a full and complete record be kept of proceedings in each and every case, and this requirement and the effect of such proceedings and adjudications therein on the status of the child in reference to criminality as well as the general purpose of the law, and the spirit in which it is to be administered are set forth as follows:

"The court shall maintain a full and complete record of all cases brought before it, to be known as the Juvenile Record.   All records may be withheld from indiscriminate public inspection in the discretion of the judge of the Court, but such record shall be open to inspection by the parents, guardians, or other authoritative representatives of the child concerned.   No adjudications under the provisions of this act shall operate as a disqualification of any child of any public office, and no child shall be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction.

"This act shall be construed liberally and as remedial in character. The powers hereby conferred are intended to be general and for the purpose of affecting the beneficial purposes herein set forth.   It is the intention of this act that in all proceedings under its provisions the court shall proceed upon the theory that a child under its jurisdiction is the ward of the State, and is subject to the discipline and entitled to the protection which the court should give such child under the circumstances disclosed in the case."

Sec. 5 and three subsequent sections contain general regulations as to procedure and requiring notices to parents or guardians or others having present control of the child under investigation, and in sec. 9, the course and scope of the inquiry at the hearing and the disposition that may be made of cases under investigation, are stated as follows:

"SEC. 9.   Upon the return of the summons or other process or after any child has been taken into custody, at the time set for the hearing the court shall proceed to hear and determine the case in a summary

manner. The court may adjourn the hearing from time to time and inquire into the habits, surroundings, conditions, and tendencies of the child so as to enable the court to render such order or judgment as shall best conserve the welfare of the child and carry out the objects of this act. In all cases the nature of the proceedings shall be explained to the child, and to the parents or guardian or person having the custody or the supervision of the child. At any stage of the case the court may, in its discretion, appoint any suitable person to be the guardian *ad litem* of the child for the purposes of the proceeding. The court, if satisfied that the child is in need of the care, protection, or discipline of the State, may so adjudicate, and may find the child to be delinquent, neglected, or in need of more suitable guardianship. Thereupon the court may:

"(a) Place the child on probation, subject to the conditions provided hereinafter; or

"(b) Commit the child to the custody of a relative or other fit person of good moral character, subject, in the discretion of the court, to the supervision of a probation officer, and the further orders of the court; or

"(c) Commit the child to the custody of the State Board of Charities and Public Welfare, to be placed by such board in a suitable family home and supervise therein; or

"(d) Commit the child to a suitable institution maintained by the State or any subdivision thereof, or to any suitable private institution, society, or association incorporated under the laws of the State and approved by the State Board of Charities and Public Welfare authorized to care for children or to place them in suitable family homes; or

"(e) Render such further judgment or make such further order of commitment as the court may be authorized by law to make in any given case.

"(f) If a child of fourteen years of age be charged with a felony for which the punishment as now fixed by law cannot be more than ten years in prison, his case shall be investigated by the probation officer, and the judge of the juvenile court, as provided for in this act, unless it appears to the judge of the juvenile court that the case should be brought to the attention of the judge of the Superior Court, in which case the child should be held in custody or bound to the next term of the Superior Court as now provided by law."

In sec. 10 reference is again made to the disposition of the child in reference to its treatment, and it is enacted, among other things, "That no child coming within the provisions of this act shall be placed in any penal institution, jail, lock-up, or other place where such child can come into contact at any time or in any manner with any adult convicted of crime, and committed or under arrest and charged with crime."

Ample provision is made also for care and supervision of the child pending its wardship by the court, through its designated officers, and further: "When a child has been committed to the custody of an institution not controlled by the State, or to any association, society, or person, on petition of the parent, guardian, or next friend of the child, the case may be investigated and such further orders and decrees made therein as the 'good of the child and circumstances of the case may require.' "

It may be well to note that the exceptions appearing here as to children committed to a State institution refers only to the action of the juvenile court in the premises, and for the reason, doubtless, that it was not considered feasible that the rules and discipline of a public institution of that character should be liable to obstruction or interference by any one of the 100 or more juvenile courts existent throughout the State. But the exemptions referred to creates no limitations on the jurisdiction of the Superior Court in these cases which, under the first sections of the act and by virtue of its powers, as a court of general jurisdiction administering both law and equity, may always, on proper application and appropriate writs, make inquiry and investigations into the status and conditions of children disposed of under the statute, and make such orders and decrees therein as the right and justice of the case may require. And in sec. 20 it is provided that an appeal lies from any judgment of the juvenile court to the Superior Court, at the instance of the child's parents, or, if none, by the guardian, custodian or next friend of the child, where this disposition made of the child can be reviewed by the judge, and such orders made therein as may be in accordance with law and the course and practice of the court.

On this, a sufficient statement of the terms of the statute for a proper apprehension of the question presented, we are of opinion, and so hold, that the prosecution of these infant children, both under 10 years of age at the time of the alleged offense, cannot now be maintained. Recurring to the portions of the law more directly relevant to the inquiry, it appears that original and exclusive jurisdiction of all cases of delinquent and dependent children, as defined and specified in the act, is vested in the Superior Courts; that in causes investigated and determined by the juvenile court, constituted for such purpose a part of the Superior Court, no adjudication of such court shall operate to disqualify the child for public office nor shall it be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction, and further, that no child dealt with under the provisions of the act shall be placed in any penal institution or other place where they may come in contact, at any time or manner, with adults convicted of crime or charged with it. And, in reference to the disposition of children

charged as delinquents by reason of having violated a State or municipal law, and that alone, it is provided in sec. 9 that a child of 14 years, charged with a felony in which the punishment, as now fixed by law, cannot exceed 10 years, the judge of the juvenile court may, if the case be of a nature to require it, bind such child over to the next term of the Superior Court, it being the clear and necessary inference that, as to children of 14 and upwards, and in case of felonies when the punishment may exceed 10 years, the juvenile department of the Superior Court is without jurisdiction of the offense. And from these provisions we conclude, as ruled by his Honor in the court below, that children under 14 years of age are no longer indictable as criminals, but are, in the cases specified, committed for reformation and primarily to the juvenile department of the Superior Court.

2. That children 14 years and over to 16, and in case of felonies, in which the punishment cannot exceed the period of 10 years, are committed to the investigation of the juvenile court, and may be bound over to be proceeded against under the criminal law appertaining to the case.

3. As to children of 14 years and over, and in case of felonies in which the punishment may be more than 10 years, they shall, in all instances, be subject to prosecution for crime as in case of adults.

It is the accepted position in this State that our Constitution in vesting the General Assembly with legislative authority, conferred and intended to confer upon that body all the "legislative powers of the English Parliament or other government of a free people," except where restrained by express constitutional provision or necessary implication therefrom. *Thomas v. Sanderlin,* 173 N. C., 329-332; *S. v. Lewis,* 142 N. C., 626; Black Constitutional Law (3 ed.), sec. 351, erroneously printed in *Thomas' case* as sec. 357. Considered in view of this principle, we find nothing in our Constitutions, State or Federal, which inhibits legislation of this character. Art. XI, after establishing the only punishments for crime that may be recognized by the laws of the State, in section 2, provides, "That the object of punishment being not only to satisfy justice, but to reform the offender and thus prevent crime, murder, arson, burglary, and rape, and these only shall be punished with death if the General Assembly shall so enact," and sec. 4 of the Bill of Rights contains admonitions against "cruel and unusual punishments," both restrictive of the severity of punishment, and, with these limitations, the question of crime, and its punishment and whether to impose or withdraw it is referred entirely to the legislative will. And the act concerning delinquent, dependent, and wayward children, who have always been regarded in a peculiar sense as within the care and wardship of the State, comes well within the right of classification

referred so largely by State and Federal law to the legislative discretion. *Smith v. Wilkins,* 164 N. C., 136; *Morris v. Ex. Co.,* 146 N. C., 167; *Efland v. R. R.,* 146 N. C., 135; *S. v. Heitman* (Kan.), 181 Pac., 630.

Statutes of this kind have been very generally upheld in the authoritative cases on the subject, and our own Court has already expressed its approval of the general principles upon which they are made to rest. *In re Watson,* 157 N. C., 340; *Van Walters v. Board and Guardian,* 132 Ind., 567; *Mill v. Brown,* 31 Utah, 473; *Lindsay v. Lindsay,* 257 Ill., 328; *Pugh v. Bowden,* 54 Fla., 302; *Hunt v. Wayne Co. Cir. Judges,* 142 Mich., 93; *Commonwealth v. Fisher,* 213 Pa. St., 48; *State, ex re, v. Marmorget,* 111 La., 226; *Prescott v. State,* 19 Ohio St., 184; *Ex parte Januszewski,* 196 Fed., 123.

To the objections frequently raised that these statutes ignore or unlawfully withhold the right to trial by jury, these and other authorities well make answer that such legislation deals and purports to deal with delinquent children not as criminals, but as wards and undertakes rather to give them the control and environment that may lead to their reformation and enable them to become law-abiding and useful citizens, a support and not a hindrance to the commonwealth. Speaking to this aspect of the matter in *Watson's case, Associate Justice Allen,* delivering the opinion, said: "The question as to the extent to which a child's constitutional rights are impaired by a restraint upon its freedom has arisen many times with reference to statutes authorizing the commitment of dependent, incorrigible, or delinquent children to the custody of some institution, and the decisions appear to warrant the statement, as a general rule, that, where the investigation is into the status and needs of the child, and the institution to which he or she is committed is not of a penal character, such investigation is not one to which the constitutional guaranty of a right to trial by jury extends, nor does the restraint put upon the child amount to a deprivation of liberty within the meaning of the declaration of rights, nor is it a punishment for crime."

And in *Ex parte Januszewski, supra, Sater, J.,* speaking to a similar statute, said: "The purpose of the statute is to save minors under the age of 17 years from prosecution and conviction on charges of misdemeanors and crimes, and to relieve them from the consequent stigma attaching thereto; to guard and protect them against themselves and evil-minded persons surrounding them; to protect and train them physically, mentally, and morally. It seeks to benefit not only the child, but the community also, by surrounding the child with better and more elevating influences and training it in all that counts for good citizenship and usefulness as a member of society. Under it, the State, which, through its appropriate organs, is the guardian of the children within

its borders (*Van Walters v. Board,* 132 Ind., 569; 32 N. E., 568; 18 L. R. A., 431), assumes the custody of the child, imposes wholesome restraints, and performs parental duties, and at a time when the child is not entitled to either by the laws of nature or of the State, to absolute freedom, but is subjected to the restraint and custody of a natural or legally constituted guardian to whom it owes obedience and subjection." . . . And further: "The welfare of society requires and justifies such enactments. The statute is neither criminal or penal in its nature, but an administrative police regulation." And a perusal of this statute will disclose that the rights of parents have been throughout most carefully conserved.

In any proceedings under the law, they must be notified and given an opportunity to appear and be heard. If the judgment of the juvenile court is against them, they may appeal and have such judgment reviewed by the judge of the Superior Court. And if the guardianship of the child is taken over by the State, they are allowed, on proper application, at any time, to have their child brought before the court, its condition inquired into, and further orders made concerning it except, as shown, when committed to a State institution, and then they may apply directly to the Superior Court. And in any sane and just administration of this measure, the family relationship and this parental right, which are at the very basis of our social order, and among its chiefest bulwarks, must always be given full consideration.

Speaking to this question in 20 R. C. L., pp. 601-602, quoted with approval in *Means case,* 176 N. C., 311, the author says: "The natural affection of parents is ordinarily the best assurance of the child's welfare, and the object to be sought for the child is not so much the luxury and social advantages, which more wealthy guardians might be able to give it, as the wholesome intellectual and moral atmosphere likely to be found in its natural home." But this right and relationship, important as it is, is not absolute and universal, and may be made to yield when it is established that the welfare of the child and the good of the community clearly requires it. This has been held with us in numerous decisions concerning the disposition of children under the general principles of the common law and equity prevailing in this State. *In re Warren,* 178 N. C., 43; *In re Means,* 176 N. C., 307; *Atkinson v. Downing,* 175 N. C., 244; *In re Mercer Fain,* 172 N. C., 790. And, undoubtedly, it may be so provided by an act of the Legislature in the well ordered exercise of the police power. At common law, there is a conclusive presumption that a child under 7 years of age is incapable of committing crime, and the same presumption exists to the age of 14, as to minor offenses. *S. v. Pugh,* 52 N. C., 61. Between 7 and 14, and as to graver crimes, there was also a presumption against the ability to com-

mit them, rebuttable, however, on clear and convincing proof that the child possessed the knowledge and discretion requisite for legal accountability. The statute in this respect only operates to extend the conclusive presumption, in all cases, to children under 14, and as we have endeavored to show, is clearly within the legislative powers.

It may have been better that, as to the higher crimes of murder, arson and the like, the principles of the common law should continue to prevail, but, as suggested by an able, ardent advocate of the measure, and a firm believer in it, there could not well be conceived, in this day and time, a case where the enlightened public sentiment of the State would approve the capital execution of a child under 14, and, if this be true and it comes to a question as to whether a child of that immature age should be degraded and punished as a criminal or restrained and disciplined with a view to its reformation, the advocates of the latter course would seem to have the better of the argument. These considerations, however, are entirely for the Legislature, and that body having passed a valid statute, exempting children under 14 from prosecution for crime, it is ours only to observe its requirements and interpret it according to its true intent and meaning. The case of *S. v. Newell,* 172 N. C., 933, to which we were cited, was on a law having substantially different provisions, to wit, Laws 1915, ch. 122, and which is expressly repealed by the present statute.

There is no error, and the judgment of the Superior Court is

Affirmed.