IN RE: BARBARA BURRUS (69-J-17), SARAH WHITNEY (69-J-18), DAR-
LENE McCOY (69-J-19), NINA WHITNEY (69-J-20), DORENE HAR-
RIS (69-J-21), PATRICIA COLLINS (69-J-22), DOLLIE GIBBS (69-J-
23), MARIA HARRIS (69-J-24), TRINA SELBY (69-J-1), DORENE
HARRIS (69-J-3), JULIA ANNA COLLINS (69-J-4), CHERLYN WHIT-
NEY (69-J-5), CATHERINE GIBBS (69-J-6), DEBORAH ANN COL-
LINS (69-J-8), MARIA HARRIS (69-J-9), EDDIE WHITLEY (69-J-
10), ALONZO EDWARD HOLLOWAY (69-J-30), EVELYN EVAN-
GELINE GIBBS (69-J-11), ROSE MARY COLLINS (69-J-12), DEBRA
ANN COLLINS (69-J-13), CATHERINE GIBBS (69-J-14), JULIA ANNA
COLLINS (69-J-16), ELVIRA VASHTI WESTON (69-J-28), SUDIE
BELL McCULLOR (69-J-29), BARBARA BURRUS (68-J-4), WILLIAM
BLOUNT (68-J-5), NEKOLA GREEN (68-J-6), SHARON HARRIS
(68-J-7), SARAH ANNETTE WHITNEY (68-J-8), WALTER ANTHONY
GREEN (68-J-9), DESSIE HARRIS (68-J-10), EVELYN GIBBS (68-J-
11), RONNIE LEE TOPPING (68-J-12), TYRONE DUDLEY (68-J-13),
THERESA BLOUNT (68-J-14), LINDA SUE GIBBS (68-J-15), PA-
TRICIA COLLINS (69-J-27), DONALD WHITE (69-J-25), WILMA
JOYCE WHITAKER (69-J-26), JAMES LAMBERT HOWARD (68-J-
3), ROSE MARY WHITNEY (69-J-15), CHERLYN D. WHITNEY (69-
J-2), TRINA SELBY (69-J-7), ALONZO EDWARD HOLLOWAY (69-J-
31), SELMA SHELTON (69-J-32), JOHN GREEN CUNNINGHAM (69-
J-33)

No. 15

(Filed 15 October 1969)

1. Constitutional Law § 29;   Courts § 15;   Infants § 10—   juvenile
   proceedings — delinquency — jury trial

   A juvenile has no constitutional right to a jury trial in a juvenile court
   proceeding on the issue of his delinquency.

2. Constitutional Law § 30—   criminal prosecution — public trial —
   state courts

   Right to a public trial in criminal prosecutions accorded by the Sixth
   Amendment to the U. S. Constitution is now applicable in both state and
   federal courts by virtue of the Due Process Clause of the Fourteenth
   Amendment.

3. Courts § 15;   Infants § 10—   juvenile proceedings — criminal pros-
   ecutions

   Juvenile proceedings are not "criminal prosecutions," nor is a finding
   of delinquency in a juvenile proceeding synonymous with "conviction of
   a crime."

4. Courts § 15;   Infants § 10—   juvenile delinquency hearing — due
   process

   The basic requirements of due process and fairness must be satisfied
   in a juvenile court adjudication of delinquency.

5. Courts § 15;   Infants § 10—   juvenile delinquency hearing — co-
   erced confession

   The Fourteenth Amendment applies to prohibit the use of a coerced
   confession of a juvenile.

**6. Courts § 15;    Infants § 10—    juvenile delinquency hearing — adequate notice**

Notice must be given in juvenile proceedings which would be deemed constitutionally adequate in a civil or criminal proceeding; that is, notice must be given the juvenile and his parents sufficiently in advance of scheduled court proceedings to afford them reasonable opportunity to prepare and the notice must set forth the alleged misconduct with particularity.

**7. Courts § 15;    Infants § 10—juvenile delinquency hearing — right to counsel**

In juvenile proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to counsel and, if unable to afford counsel, to the appointment of same.

**8. Courts § 15;    Infants § 10—    juvenile delinquency hearing — self-incrimination**

Juvenile proceedings to determine delinquency, as a result of which the juvenile may be committed to a state institution, must be regarded as "criminal" for Fifth Amendment purposes of the privilege against self-incrimination.

**9. Constitutional Law § 30;    Courts § 15;    Infants § 10—    juvenile delinquency hearing — public trial**

A juvenile has no constitutional right to a public trial in a juvenile court proceeding on the issue of his delinquency.

**10. Courts § 15;    Infants § 10—    juvenile cases — jurisdiction — district court**

The district court has exclusive, original jurisdiction over cases involving juveniles, which jurisdiction is to be exercised solely by the district judge. G.S. 7A-277.

**11. Courts § 15;    Infants § 10—    juvenile delinquents — wards of State — duty of juvenile court**

The North Carolina Juvenile Court Act deals with delinquent children as wards of the State, not as criminals, and makes it the constant duty of the juvenile court to give each child subject to its jurisdiction such oversight and control as will conduce to the welfare of the child and to the best interest of the State.

**12. Statutes § 4—    constitutionality — vagueness**

While due process of law is violated by a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, constitutional requirements are met when the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly.

**13. Disorderly Conduct § 1;    Highways and Cartways § 10;    Schools § 15—    disorderly conduct in county building — interrupting school — impeding traffic — constitutionality**

In this juvenile proceeding to determine delinquency for alleged viola-

tions of State law, statutes which the juveniles allegedly violated, G.S. 14-132, prohibiting rude or riotous noise, disorderly conduct or nuisance in any public building of any county, G.S. 14-273, prohibiting the wilful interruption or disturbance of a school or injury to school property, and G.S. 20-174.1, prohibiting the wilful standing, sitting or lying upon the highway so as to impede traffic, *are held* not unconstitutional for vagueness.

**14. Courts § 15;     Infants § 10—     juvenile delinquency statute — delinquent — violation of State law — constitutionality**

Provision of G.S. 110-21 subjecting to supervision by the district court any child less than sixteen years of age who is delinquent or who violates any State law is not unconstitutional for vagueness.

**15. Courts § 15;     Infants § 10—     juvenile delinquency proceeding — violation of State law — other provisions of G.S. 110-21**

Where juveniles were disciplined pursuant to G.S. 110-21 for violations of State law, it is unnecessary upon appeal to determine whether further provisions of the statute are void for vagueness in failing to define the terms "unruly," "wayward," "misdirected," "disobedient," or "beyond the control of their parents."

**16. Courts § 15;     Infants § 10—     juvenile statutes — commitment "during minority" — constitutionality**

The juvenile statutes are not unconstitutional in that a juvenile may be committed "during minority" for a violation of State law, which may be a longer period of time than the criminal law visits upon an adult for a violation of the same statute, since the protective custody of children under juvenile laws cannot be equated with the trial and punishment of adults under the criminal statutes.

**17. Courts § 15;     Infants § 10—     juvenile delinquency proceeding — due process**

In this juvenile delinquency proceeding, the basic requirements of due process were satisfied where the alleged misconduct of the children was stated with particularity in the petitions and brought to the attention of the juveniles and their parents in apt time, the juveniles were given timely notice of the hearing and afforded adequate opportunity to prepare for it, they were represented by able counsel and faced their accusers with lengthy cross-examination, no statements or confessions were offered against them, and they were accorded and exercised the privilege of remaining silent and declining to testify.

**18. Appeal and Error § 6;     Courts § 15;     Infants § 10—     juvenile proceedings — appeal to Court of Appeals**

An appeal may be taken from any order or judgment of a juvenile court to the Court of Appeals, such appeals being on the record on questions of law or legal inference. G.S. 7A-195; G.S. 110-40.

**19. Criminal Law § 152;     Courts § 15;     Infants § 10—     juvenile proceedings — appeal in forma pauperis — criminal procedure**

Statutes dealing with appointment of counsel to represent an indigent criminal defendant upon appeal and permitting them to appeal in forma

pauperis have no application to appeals from juvenile proceedings in the district court.

**20. Appeal and Error § 19;    Courts § 15;    Infants § 10— juvenile proceedings — appeals in forma pauperis — compliance with G.S. 1-288**

Appeals in forma pauperis in juvenile proceedings tried in the district court are governed by the statute applicable to civil actions, G.S. 1-288, and compliance with its terms is necessary to entitle juveniles to an order allowing them to appeal in forma pauperis.

**21. Appeal and Error § 19— appeal in forma pauperis — failure to comply with G.S. 1-288**

In this juvenile delinquency proceeding, the district court did not err in declining to issue an order providing for an appeal in forma pauperis, where the required affidavit and certificate of counsel were not filed in compliance with G.S. 1-288, no prejudice having resulted to the juveniles involved in any event since their appeals have been prepared, docketed and heard by both courts in the Appellate Division of the General Court of Justice.

**22. Appeal and Error § 26— error on face of record — modification of judgment**

Where there is error on the face of the record, an appeal presents the matter for review, and the judgment may be modified to conform to legal requirements.

**23. Courts § 15;    Infants § 10— juvenile proceedings — disposition by the court — alternatives in G.S. 110-29**

When the juvenile court finds that a child is delinquent, neglected or in need of more suitable guidance, the court may use any one of the alternative dispositions set forth in G.S. 110-29 but is not empowered to use two or more at the same time.

**24. Courts § 15;    Infants § 10— juvenile proceedings — probation — commitment — validity of order**

Where the juvenile court placed each child on probation subject to the conditions named in the order, the court exhausted its immediate authority, and further provision of the order in each case which adjudged that the juvenile be committed to the custody of the county welfare department to be placed in a State institution for delinquents is unauthorized and must be deleted.

**25. Courts § 15;    Infants § 10— juvenile proceedings — probation**

When a juvenile is placed on probation, the judge determines the duration and conditions thereof, and may modify same at any time.

**26. Courts § 15;    Infants § 10— juvenile proceedings — revocation of probation — alternative dispositions**

Probation of a juvenile may be revoked at any time the court finds the conditions of probation have been breached, and the court may then commit the juvenile or make such other disposition as it might have made at the time the child was placed on probation.

BOBBITT and SHARP, JJ., dissent.

Appeals by respondents from decisions of the Court of Appeals affirming judgments of *Ward, J.*, entered at the 9 and 21 January 1969 Juvenile Sessions, Hyde County District Court.

These cases, more than forty in number, were consolidated by consent for hearing in the Juvenile Court of Hyde County. On appeal to the Court of Appeals they were lumped into one record. Upon appeal to this Court it was made to appear that the factual situation in two additional cases 'involving the juveniles Selma Shelton and John Green Cunningham was substantially identical to the factual situation in the case of *In Re Burrus, et al.*, and this Court ordered a consolidation and heard all the cases as one appeal.

All persons involved in these proceedings are juveniles residing in Hyde County, North Carolina. On six different occasions in November and December, 1968, these juveniles (with the exception of James Lambert Howard) were observed by State Highway Patrolmen standing upon the public highway tossing a basketball back and forth and singing, clapping, and marching. "Between September 11th and November 13th they marched practically every day." As a result, vehicular traffic was prevented from proceeding in either direction. The juveniles and numerous adults were asked to remove themselves from the road to allow traffic to pass. They either refused to do so or left the roadway and immediately returned. Said juveniles, with numerous adults who were also participating in the unlawful conduct, were then taken into custody. After ascertaining the juveniles herein named to be under sixteen years of age the officers obtained juvenile petitions. The following petition *in re* Barbara Burrus is substantially identical to the petitions in all cases (except James Lambert Howard):

"STATE OF NORTH CAROLINA   In the General Court of
COUNTY OF HYDE             Justice
                           District Court Division

In the Matter of
Barbara Burrus
Age 13
Box 83, Fairfield, N. C.

Charles Smith, Petitioner, having sufficient knowledge or information to believe that the child named above (whether one or more) is in need of the care, protection or discipline of the State, alleges:

1. That said child is less than sixteen years of age, and is now residing within the territorial jurisdiction of the District Court for this County at the address shown above.

2.  That the names of the parents and of the person having the guardianship, custody or supervision of said child if other than a parent, are as follows:

| Name | Relation | Address |
|------|----------|---------|
| Lillie Mae Burrus | mother | Box 83, Fairfield, N. C. |
| David Burrus | father | Box 83, Fairfield, N. C. |

3.  That the facts and circumstances supporting this Petition for court action are as follows:

That at and in the county named above on or about Nov. 14, 1968, the defendant above named did intentionally, unlawfully, and willfully stand upon the traveled part or portion of a State highway and street passing through and traversing the community of Swan Quarter and did willfully, intentionally and unlawfully stand upon that portion of said highway and street used by the traveling public in the operation of automobiles, trucks and other motor vehicles in such a way and manner as to cause said motor vehicles being operated upon the traveled portion of said street and highway to stop and cease their traveling or operation and in some cases caused said motor vehicles and the operators of same to be detained, stop and cease operation and to force same, in some cases, to seek detours or other methods of traveling, all in such a way and manner as to obstruct, hinder, impair and stop the progress of said motor vehicles and their operators and to impede the regular flow and normal traffic of said motor vehicles and their operators upon said highway and street, contrary to the statute in such cases made and provided, the same being Section 20-174.1 of the General Statutes of North Carolina, and against the peace and dignity of the State.

Petitioner, therefore, prays the court to hear and determine this case, and, if need be found, to give said child such oversight and control as will promote the welfare of such child and the best interest of the State.

This 3 day of January, 1969.

s/ Sgt. Charles Smith
Petitioner
S. H. P. Washington, N. C.

(Verified by Charles Smith, Petitioner, on 1-3-69.)"

Sergeant Rogers of the State Highway Patrol observed sixteen persons, including James Lambert Howard, in the Principal's office of the O. A. Peay School at 10:30 a.m. on December 5, 1968, while school was in session, yelling, piling objects against the windows,

IN RE BURRUS

moving furniture including a metal cabinet, placing a bed against the door, emptying papers on the floor, turning chairs upside down, and generally littering the office with books, papers, a roll of electrical wire and other items of property belonging to the school. As a result, the school closed before noon. None of the sixteen were students or school personnel. All sixteen were taken into custody and a petition filed with respect to Howard in the following language:

"STATE OF NORTH CAROLINA    In the General Court
COUNTY OF HYDE             of Justice
                           District Court Division
In the Matter of
James Lambert Howard
Age 15
P. O. Box 222, Engelhard, N. C.

Clyde Fentress, Petitioner, having sufficient knowledge or information to believe that the child named above (whether one or more) is in need of the care, protection or discipline of the State, alleges:

1.   That said child is less than sixteen years of age, and is now residing within the territorial jurisdiction of the District Court for this County at the address shown above.

2.   That the names of the parents, and of the person having the guardianship, custody or supervision of said child if other than a parent, are as follows:

| Name | Relation | Address |
|------|----------|---------|
| Thad Howard | Father | P. O. Box 222, Englehard, N. C. |
| Pearl Howard | Mother | P. O. Box 222, Englehard, N. C. |

3.   That the facts and circumstances supporting this Petition for Court action are as follows:

That at and in the County named above on or about December 5, 1968 the defendant named above did unlawfully, willfully and intentionally and did knowingly, willfully, and unlawfully interrupt and disturb the O. A. Peay School, the same being a public school owned and operated by the Board of Education of Hyde County, and located in the community of Swan Quarter, North Carolina, and being a public building, by uttering rude and riotous noises and shouts and by engaging

in acts of disorderly conduct in and near said public school building, owned and operated by the Board of Education of Hyde County, which said unlawfully, rude and riotous noises, shouts and other disorderly conduct in and near public school building interrupted and disturbed the operation of said public school.

And, the said Clyde Fentress, complainant as aforesaid, upon oath further alleges that the said defendant, James Lambert Howard, did further interrupt and disturb operation of a public school operated by the Board of Education of Hyde County, the same being the O. A. Peay School, of the Community of Swan Quarter, by engaging in disorderly acts and conduct in and near said public school by seizing and scattering the papers, books and other equipment of said school and by defacing, injuring and damaging the public school furniture and other education equipment of the said O. A. Peay School, owned and operated by the Board of Education of Hyde County, all of which occurred while said public school was in regular session and performing the educational functions administered by said Board of Education.

All of the above riotous and disorderly interruptions and disturbances being contrary to the statutes made and provided, the same being Sections 14-132 and 14-273 of the General Statutes of North Carolina, and contrary to the peace and dignity of the State.

Petitioner, therefore, prays the court to hear and determine this case, and, if need be found, to give said child such oversight and control as will promote the welfare of such child and the best interest of the State.

This 5th day of December, 1968.

s/ C. O. Fentress   S.B.I.
Petitioner
Washington, North Carolina

(Verified by C. O. Fentress, Petitioner, on 12-5-68.)"

Summonses were duly issued in each proceeding and at the time and place named therein the District Court judge conducted a hearing at the commencement of which he ordered the general public excluded from the room. The judge stated that he was preparing to conduct a juvenile hearing — not a criminal trial, and that no child would be found to have committed a crime. He thereupon ordered the general public excluded and stated that only officers of the court,

the juveniles, their parents or guardians, their attorney and witnesses would be present for the hearing. Judge Ward further announced that only the juvenile cases would be heard and that no other court business would be conducted. In each instance, counsel for the juveniles objected to the exclusion of the general public and demanded a jury trial. The objection was overruled and request for jury trial denied.

At the conclusion of the various hearings, Judge Ward entered the following "Order of Commitment and Probation" with respect to Barbara Burrus:

"This matter, coming on to be heard, and being heard at this regularly calendared session of Juvenile Court for the County of Hyde convened this 9th day of January, 1969; and the Court having determined that said child is under sixteen (16) years of age and is a resident of Hyde County, N. C.; and the Court having heretofore explained to the child and to Lillie Mae Burrus — her mother — the nature of this proceeding; as will appear in the minutes; and said child being represented by James E. Ferguson II, Esq., Attorney of Record; and it having been agreed to by the said James E. Ferguson, II and Hon. Herbert Small, Solicitor for this The First Solicitorial District, that this matter should be consolidated with 69-J-18; 69-J-19; 69-J-20; 69-J-21; 69-J-22; 69-J-23; 69-J-24, for hearing, findings and disposition and said attorneys having further agreed that such consolidation is in no way prejudicial to said child and does not violate the spirit or intent of Article 2, Chapter 110 of the General Statutes of North Carolina; and it appearing to the Court, and the Court finding as a fact, that on or about the 14 day of November, 1968, the said child did in the company of others go upon one of the main traveled highways in Swan Quarter and did remain upon said traveled portion of said highway in a manner calculated to impede traffic — all of said acts having been willfully and intentionally done and designed to impede traffic, and that said acts constitute a violation of GS 20-174.1, an act for which an adult may be punished by law; and it further appearing to the Court and the Court being satisfied and finding as a fact that the said child is in need of the care, protection and discipline of the State, and is in need of more suitable guardianship and is delinquent;

It is now, therefore, ORDERED, ADJUDGED and DECREED that Barbara Burrus be, and she is hereby committed

to the custody of the Hyde County Department of Public Welfare to be placed by said department in a suitable institution maintained by the State for the care of delinquents (as said institutions are enumerated in G.S. 134-91), after having first received notice from the superintendent of said institution that such person can be received, and held by said institution for no definite term but until such time as The Board of Juvenile Correction or the Superintendent of said institution may determine, not inconsistent with the laws of this State; this commitment is suspended and said child placed upon probation for 12 months, under these special conditions of probation:

1. That said child violate none of the laws of North Carolina for 12 months;

2. That said child report to the Director of the Hyde County Public Welfare Department, or his designated agent, at least once each month at a time and place designated by said Director;

3. That said child be at her residence by 11:00 o'clock P.M. each evening.

4. That said child attend some school, public or private, or some institution offering training approved by the Hyde County Director of Public Welfare.

This matter is retained pending further order of the Court.

This 9th day of January, 1969.

/s/ Hallett S. Ward"

Similar commitment and probation orders were entered with respect to all the other juveniles except James Lambert Howard. As to him the following "Order of Commitment and Probation" was entered:

"This matter coming on to be heard and being heard at this regularly calendared session of Juvenile Court for the County of Hyde convening this 10th day of January, 1969, the Court having determined that the juvenile is under sixteen (16) years of age, the Court having heretofore explained to the child and to Pearl Howard, the mother of the child, the nature of this proceeding, it appearing to the Court, and the Court finding as a fact that on or about the 5th day of December, 1968, the said child did, in the company of 15 others, enter without lawful authority the O. A. Peay School in Swan Quarter, North Carolina, and participate with others in making loud noises

which were calculated to and did in fact disturb and disrupt said school which was then in session and did disarrange and disrupt an office in said school and did join with others in a course of conduct designed to cause a cessation of school activities and that said acts constitute a violation of GS 14-132 and GS 14-273; and it further appearing to the Court and the Court being satisfied and finding as a fact that said James Lambert Howard is in need of the care, protection and discipline of the State and is in need of more suitable guardianship, and is delinquent.

Now, it is therefore, ORDERED, ADJUDGED AND DECREED, that James Lambert Howard be, and he is hereby committed to the custody of the Hyde County Department of Public Welfare to be placed by said department in a suitable institution maintained by the State (as said institutions may be enumerated in GS 134-91) and held by said institution for no definite term, but until such time as the Board of Juvenile Correction or the Superintendent of said institution shall determine, not inconsistent with the laws of this State. This commitment is suspended and said child placed on probation for 24 months:

1. That he violate no laws of the State of North Carolina for 24 months.

2. That he be at his residence by 11:00 P.M. each evening.

3. That said child attend some school, public or private, or some institution offering training approved by the Hyde County Director of Public Welfare.

4. That he report to the Director of the Hyde County Department of Public Welfare, or his designated agent at least once each month at a time and place designated by said Director.

This matter is retained pending further order of the Court.

This 10 day of January, 1969.

s/ Hallett S. Ward"

From the foregoing orders each juvenile through counsel appealed to the Court of Appeals which affirmed the judgments by decisions appearing in 4 N.C. App. 523, 167 S.E. 2d 454, and 5 N.C. App. 487, 168 S.E. 2d 695. Respondents thereupon appealed to the Supreme Court, alleging involvement of substantial constitutional questions.

*Chambers, Stein, Ferguson and Lanning by James E. Ferguson, II, Attorneys for respondent appellants.*

*Robert Morgan, Attorney General, and Ralph Moody, Deputy Attorney General, for the State.*

HUSKINS, J.

Four questions, preserved and brought forward, will be discussed in chronological order.

[1]	1.	Under the Sixth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 17, of the Constitution of North Carolina, is a juvenile entitled to a jury trial in a juvenile court proceeding on the issue of his delinquency?

The Constitution of the United States, Article III, Section 2, reads in pertinent part as follows: "The trial of all crimes, except in cases of impeachment, shall be by jury. . . ." The Sixth Amendment thereto provides, *inter alia:* "In all criminal prosecutions the accused shall enjoy the right to a . . . trial, by an impartial jury. . . ."

The Constitution of North Carolina, Article I, Section 13, reads as follows: "No person shall be convicted of any crime but by the unanimous verdict of a jury. . . . The Legislature may, however, provide other means of trial, for petty misdemeanors, with the right of appeal."

Absent a statute providing for a jury trial, it is almost universally held that in juvenile court delinquency proceedings the alleged delinquent has no right under the pertinent State or Federal Constitution to demand that the issue of his delinquency be determined by a jury. See Annotation: Right to Jury Trial in Juvenile Court Delinquency Proceedings, 100 A.L.R. 2d 1241, where cases are collected from twenty-five states and the District of Columbia. "The view has generally been taken that statutes providing for the custody or commitment of delinquent or incorrigible children are not unconstitutional by reason of failure to provide for a jury trial, where the investigation is into the status and needs of the child, and the institution to which the child is committed is not of a penal character. Thus it is held that a constitutional guaranty of trial by jury has no application to a proceeding under the juvenile court act." 31 Am. Jur., Juvenile Courts, etc. § 67; 50 C.J.S., Juries § 80. North Carolina follows the general rule. *In Re Watson,* 157 N.C. 340, 72 S.E. 1049; *State v. Burnett,* 179 N.C. 735, 102 S.E. 711; *State v. Frazier,* 254 N.C. 226, 118 S.E. 2d 556. Federal decisions to date

have not changed it. *Kent v. United States,* 383 U.S. 541, 16 L. ed 2d 84, 86 S. Ct. 1045; *In Re Gault,* 387 U.S. 1, 18 L. ed 2d 527, 87 S. Ct. 1428; *Duncan v. Louisiana,* 391 U.S. 145, 20 L. ed 2d 491, 88 S. Ct. 1444; *In Re Whittington,* 391 U.S. 341, 20 L. ed 2d 625, 88 S. Ct. 1507. These cases enumerate the basic requirements of due process that must be satisfied in juvenile proceedings; however, the right to jury trial is not listed among them. We have not found and counsel has not cited any case supporting the right to jury trials in juvenile proceedings. We therefore adhere to our former decisions and hold that a juvenile is not entitled to a jury trial in a juvenile court proceeding on the issue of his delinquency.

**[9]** 2. Is a juvenile entitled to a public trial in a juvenile court proceeding on the issue of his delinquency?

**[2]** The Sixth Amendment to the Federal Constitution provides, among other things, that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . ." Article I, Section 13, of the Constitution of North Carolina prohibits conviction of any crime except by jury verdict in "open court." This right to a public trial is now applicable in both state and federal courts by virtue of the Due Process Clause of the Fourteenth Amendment. "In view of this nation's historic distrust of secret proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison." *In Re Oliver,* 333 U.S. 257, 92 L. ed 682, 68 S. Ct. 499 (1948). The right of an adult charged with crime to be publicly tried is thus firmly established as a matter of constitutional law. See Annotation: Right to Public Trial in Criminal Case — Federal Cases, 4 L. ed 2d 2128.

**[3-8]** Juvenile proceedings, however, stand in a different light. Whatever may be their proper classification, they certainly are not "criminal prosecutions." Nor is a finding of delinquency in a juvenile proceeding synonymous with "conviction of a crime." It has never been the practice in such proceedings, here or elsewhere, wholly to exclude parents, relatives or friends, or to refuse juveniles the benefit of counsel. Even so, such proceedings are usually conducted without admitting the public generally. See *In Re Oliver, supra* (333 U.S. 257, 266, note 12). So long as proceedings in the juvenile court meet the requirements of due process, they are constitutionally sound and must be upheld. This means that: (1) The basic requirements of due process and fairness must be satisfied in a juvenile court

adjudication of delinquency. *Kent v. United States, supra* (383 U.S. 541, 16 L. ed 2d 84, 86 S. Ct. 1045 (1966)); *In Re Gault, supra* (387 U.S. 1, 18 L. ed 2d 527, 87 S. Ct. 1428 (1967)). (2) The Fourteenth Amendment applies to prohibit the use of a coerced confession of a juvenile. *Haley v. Ohio,* 332 U.S. 596, 92 L. ed 224, 68 S. Ct. 302 (1948). *Gallegos v. Colorado,* 370 U.S. 49, 8 L. ed 2d 325, 82 S. Ct. 1209, 87 A.L.R. 2d 614 (1962). (3) Notice must be given in juvenile proceedings which would be deemed constitutionally adequate in a civil or criminal proceeding; that is, notice must be given the juvenile and his parents sufficiently in advance of scheduled court proceedings to afford them reasonable opportunity to prepare, and the notice must set forth the alleged misconduct with particularity. *In Re Gault, supra.* (4) In juvenile proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to counsel and, if unable to afford counsel, to the appointment of same. *In Re Gault, supra.* (5) Juvenile proceedings to determine delinquency, as a result of which the juvenile may be committed to a state institution, must be regarded as "criminal" for Fifth Amendment purposes of the privilege against self-incrimination. The privilege applies in juvenile proceedings the same as in adult criminal cases. *In Re Gault, supra.*

[9] We have been unable to find, and counsel has not cited, any case holding that a public hearing in juvenile proceedings is a constitutional requirement of due process. North Carolina has determined by statutory enactment that a public hearing is neither required nor in the best interest of the youthful offender. We adhere to that view. This assignment of error is therefore overruled.

3. Is the North Carolina Juvenile Court Act (Article 2 of Chapter 110 of the General Statutes) unconstitutional? Brief historical reference seems necessary and appropriate.

[10] The District Court Division of the General Court of Justice was created by Chapter 310 of the 1965 Session Laws, effective in the First Judicial District (embracing Hyde County) on the first Monday in December 1966. G.S. 7A-130, 131. As thus created the district court has exclusive, original jurisdiction over cases involving juveniles, "as such jurisdiction is set forth in chapter 110, article 2, of the General Statutes. This jurisdiction shall be exercised solely by the district judge." G.S. 7A-277.

[11] Chapter 110, Article 2, of the General Statutes delineates the practices and procedures to be followed in juvenile cases. G.S. 110-21 provides in pertinent part that the superior court (now the

district court by virtue of G.S. 7A-277) "shall have exclusive original jurisdiction of any case of a child less than sixteen years of age residing in . . . their respective districts: (1) Who is delinquent or who violates any . . . State law . . . or who is truant, unruly, wayward, or misdirected, or who is disobedient to parents or beyond their control, or who is in danger of becoming so. . . ." This statute makes it the constant duty of the court to give each child subject to its jurisdiction such oversight and control as will conduce to the welfare of the child and to the best interest of the State. *In Re Morris*, 224 N.C. 487, 31 S.E. 2d 539. It deals with delinquent children as wards of the State and not as criminals. *State v. Burnett*, 179 N.C. 735, 102 S.E. 711; *State v. Frazier*, 254 N.C. 226, 118 S.E. 2d 556.

Appellants argue that the statute fails to define any of the operative terms such as "delinquent", "unruly", "wayward", "misdirected" and "disobedient" and contend that the statute is therefore void for vagueness and uncertainty.

[12]  It is settled law that a statute may be void for vagueness and uncertainty. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." 16 Am. Jur. 2d, Constitutional Law § 552; *Cramp v. Board of Public Instruction*, 368 U.S. 278, 7 L. ed 2d 285; 82 S. Ct. 275; *State v. Hales*, 256 N.C. 27, 122 S.E. 2d 768. Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met. *United States v. Petrillo*, 332 U.S. 1, 91 L. ed 1877, 67 S. Ct. 1538.

[13]  Here, James Lambert Howard was found to be delinquent for the willful violation of (1) G.S. 14-132 which provides, *inter alia*, that if any person "shall make any rude or riotous noise or be guilty of any disorderly conduct" in any public building of any county, or shall commit any nuisance in such building, he shall be guilty of a misdemeanor; and (2) G.S. 14-273 which provides in pertinent part that if any person "shall wilfully interrupt or disturb any public or private school . . . or injure any school building, or deface any school furniture . . . or other school property, . . . he shall be guilty of a misdemeanor" and fined not more than $50 or imprisoned not more than thirty days.

Barbara Burrus and the remaining juveniles were found to be delinquent for the willful violation of G.S. 20-174.1 which provides that no person "shall wilfully stand, sit, or lie upon the highway or street in such a manner as to impede the regular flow of traffic." Violation is punishable by fine or imprisonment, or both, in the discretion of the court.

There is nothing vague or indefinite about these statutes. Men — even children — of common intelligence can comprehend what conduct is prohibited without overtaxing the intellect. Judges and juries should be able to interpret and apply them uniformly. In *State v. Wiggins*, 272 N.C. 147, 158 S.E. 2d 37, cert. den. 390 U.S. 1028, 20 L. ed 2d 285, 88 S. Ct. 1418, defendants were charged with interrupting and disturbing the Southwestern High School in Bertie County by picketing in front of the school so as to interfere with classes, a violation of G.S. 14-273. There, as here, defendants argued that the statute was void because its prohibitions were uncertain, vague and indefinite. In upholding that statute, the court said: "It is difficult to believe that the defendants are as mystified as to the meaning of these ordinary English words as . . . they profess to be in their brief. Clearly, they have grossly underestimated the powers of comprehension possessed by 'men of common intelligence.' " That observation seems appropriate here.

The Supreme Court of the United States in sustaining a conviction in the courts of New Jersey for a violation of an ordinance forbidding the use of sound trucks emitting "loud and raucous" sound, said: "The contention that the section is so vague, obscure and indefinite as to be unenforceable merits only a passing reference. This objection centers around the use of the words 'loud and raucous.' While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Kovacs v. Cooper*, 336 U.S. 77, 93 L. ed 513, 69 S. Ct. 448, 10 A.L.R. 2d 608 (1949).

**[14-15]** There is nothing vague or mysterious about a statute which provides that any child under sixteen years of age who is delinquent or who violates any state law which would subject an adult to punishment is amenable to the supervision of the juvenile court. Simply stated, that is the complete accusation against these children. It is not alleged that they were unruly or wayward or misdirected or disobedient or beyond the control of their parents. Hence, it is unnecessary to wage a war of words regarding the clarity or vagueness, as the case may be, of such terminology. We confine our discussion to the portion of the statute under which these children

were disciplined. "Generally, delinquent children . . . are children who have committed offenses against the law, or who are found to be falling into bad habits, or to be incorrigible, or who knowingly associate with vicious or immoral persons, or who are growing up in idleness and crime." 31 Am. Jur., Juvenile Courts, etc. § 36. A delinquent child is defined in Black's Law Dictionary 4th Ed. Rev. (1968) as "an infant of not more than specified age . . . who has violated any law. . . ." This seems clear enough. The challenge to these statutes based on vagueness is overruled.

**[16, 17]**　　Appellants seek to equate the protective custody of children under the juvenile laws of the State with the trial and punishment of adults under the criminal statutes. By so doing, they conclude that since a juvenile may be committed "during minority" (unless sooner released by the proper authorities) he is required "to serve a longer period of confinement" than the criminal law visits upon an adult for violation of the same statute. Therefore, they argue, the juvenile statutes are constitutionally unsound. The equation is a *non sequitur;* its rationale fallacious. Nothing in *Gault* or other recent federal decisions supports it. There are still many valid distinctions between a criminal trial and a juvenile proceeding. It suffices to say that the laws of this State and their administration by the District Court of Hyde County in these cases comply in full measure with recent constitutional standards for juvenile proceedings laid down by the United States Supreme Court in *Gault*. The record discloses complete fairness on the part of Judge Ward. The alleged misconduct of the children was stated with particularity in the petitions and brought to the attention of the juveniles and their parents in apt time. They were given timely notice of the hearing and afforded adequate opportunity to prepare for it. They were represented by able counsel and faced their accusers with lengthy cross examination. No statements or confessions, coerced or otherwise, were offered against them. They were accorded and exercised the privilege of remaining silent and declining to testify. Thus the basic requirements of due process have been satisfied. The constitutionality of the proceedings is fully sustained by *Kent* and *Gault, supra,* and by our own decisions as well. These juvenile statutes have been construed, applied and upheld in many decisions of this Court including *State v. Burnett, supra* (179 N.C. 735, 102 S.E. 711); *State v. Coble,* 181 N.C. 554, 107 S.E. 132; *In Re Hamilton,* 182 N.C. 44, 108 S.E. 385; *In Re Coston,* 187 N.C. 509, 122 S.E. 183; *Winner v. Brice,* 212 N.C. 294, 193 S.E. 400. Furthermore, statutes similar to our own have been held constitutional in over forty states against a variety of attacks. *In Re Gault, supra.* See Paulsen, *Kent v. United*

*States: The Constitutional Context of Juvenile Cases,* 1966 Supreme Court Review 167, 174. Whatever may be the shortcomings of the juvenile court, and there are many, we are not inclined to hamstring the State in its efforts to deal with errant children as wards of the State instead of criminals. The Constitution does not require such mischievous meddling. We follow the rule that statutes will not be declared unconstitutional unless they are clearly so. *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1; *State v. Warren,* 252 N.C. 690, 114 S.E. 2d 660. Appellants' challenge to the constitutionality of Article 2, Chapter 110 of the General Statutes is overruled.

4. Did the juvenile court judge err by preventing an appeal *in forma pauperis* in these proceedings?

**[18, 19]**  An appeal may be taken from any order or judgment of the juvenile court to the North Carolina Court of Appeals in all cases. When an appeal is thus taken the district judge must summarize the evidence and make findings of fact. All appeals are on the record on questions of law or legal inference. G.S. 7A-195; G.S. 110-40. By way of contrast, it should be noted that appeals from the district court in criminal cases are taken to the superior court for trial *de novo* before a jury. G.S. 7A-196(e). Thus, juvenile court proceedings in the district court are not classified as "criminal cases" appealable to the superior court; and statutes on criminal procedure, dealing with appointment of counsel for indigent defendants and permitting them to appeal *in forma pauperis,* have no application and offer no solution to the problem before us.

Appeals *in forma pauperis* in civil actions tried in superior court are governed by G.S. 1-288 which provides, in pertinent part, that "[w]hen any party to a civil action tried and determined in the superior court . . . desires an appeal from the judgment rendered in the action . . . and is unable, by reason of his poverty, to make the deposit or to give the security required by law for said appeal, it shall be the duty of the judge . . . of said superior court to make an order allowing said party to appeal . . . without giving security therefor. The party desiring to appeal . . . shall . . . make affidavit that he is unable by reason of his poverty to give the security required by law, and that he is advised by a practicing attorney that there is error in matter of law in the decision of the superior court in said action. The affidavit must be accompanied by a written statement from a practicing attorney . . . that he has examined the affiant's case, and is of opinion that the decision of the superior court, in said action, is contrary to law."

**[20, 21]**  G.S. 7A-193 provides: "Except as otherwise provided in this chapter, the civil procedure provided in chapter 1 of the General Statutes applies in the district court division of the General Court of Justice. Where there is reference in chapter 1 of the General Statutes to the superior court, it shall be deemed to refer also to the district court in respect of causes in the district court division." It is not "otherwise provided" in Chapter 7A of the General Statutes. It therefore follows that G.S. 1-288 is applicable to appeals in civil actions and juvenile proceedings tried in the district court. Compliance with its terms was necessary to entitle appellants to an order allowing them to appeal *in forma pauperis*. The requirements are mandatory and must be observed. *Anderson v. Worthington*, 238 N.C. 577, 78 S.E. 2d 333; *Williams v. Tillman*, 229 N.C. 434, 50 S.E. 2d 33; *Clark v. Clark*, 225 N.C. 687, 36 S.E. 2d 261; *Franklin v. Gentry*, 222 N.C. 41, 21 S.E. 2d 828; *McIntire v. McIntire*, 203 N.C. 631, 166 S.E. 732. Since the required affidavit and certificate of counsel were not filed in compliance with the statute, the Court of Appeals concluded that the district court judge committed no error in declining to issue an order providing for an appeal *in forma pauperis*. We concur and note parenthetically that no prejudice has resulted to the juveniles involved. Their appeals have been prepared, docketed and heard by both courts in the Appellate Division of the General Court of Justice. They have been diligently represented by able counsel. While this may not conclusively rebut the suggestion of indigency, it conclusively shows that lack of an order providing for appeals *in forma pauperis* was harmless.

**[22]**  When there is error on the face of the record an appeal presents the matter for review, and the judgment may be modified to conform to legal requirements. *James v. Pretlow*, 242 N.C. 102, 86 S.E. 2d 759; *Smith v. Smith*, 223 N.C. 433, 27 S.E. 2d 137; *Sheets v. Walsh*, 215 N.C. 711, 2 S.E. 2d 861.

**[23, 24]**  We note *ex mero motu* that the "Order of Commitment and Probation" signed by the able and patient judge in each of these cases exceeds the disposition authorized by G.S. 110-29. That statute provides that the court, if satisfied that the child is in need of the care, protection, or discipline of the State, may so adjudicate, and may find the child to be delinquent, neglected, or in need of more suitable guidance. Thereupon the court may: (1) place the child on probation subject to named conditions; *or* (2) commit the child to the custody of a relative, etc.; *or* (3) commit the child to the custody of the County Department of Public Welfare to be placed by said department in an institution maintained by the State; *or* (4) com-

mit the child directly to an appropriate State or private institution or family home; *or* (5) render such further judgment or make such further order of commitment as may be authorized by law. These authorized dispositions are stated in the alternative. The judge may use any one of them but is not empowered to use two or more at the same time. When he placed each child on probation subject to the conditions named in the order, he exhausted his immediate authority. Therefore, that portion of the order in each case which adjudged that the juvenile be "committed to the custody of the Hyde County Department of Public Welfare to be placed by said department in a suitable institution maintained by the State for the care of delinquents (as said institutions are enumerated in G.S. 134-91), after having first received notice from the superintendent of said institution that such person can be received, and held by said institution for no definite term but until such time as The Board of Juvenile Correction or the Superintendent of said institution may determine, not inconsistent with the laws of this State" is unauthorized and must be deleted. Each judgment is accordingly modified by deleting the quoted portion together with the words "this commitment is suspended and said child," which are now redundant.

[25, 26] When a child is placed on probation, as here, the judge determines the duration and conditions thereof, and may modify same at any time. Probation may be revoked at any time the court finds the conditions of probation have been breached. The court may then commit the juvenile or make such other disposition as it might have made at the time the child was placed on probation. G.S. 110-32.

The result reached by the Court of Appeals in all other respects is affirmed. Let the cases be remanded to the Court of Appeals for certification to the District Court of Hyde County for compliance with this opinion.

Modified and affirmed.

Bobbitt and Sharp, JJ., dissent.