On the trial it was insisted by the defendant's counsel, and the Judge was required so to instruct the jury, that if the facts charged in the indictment were all true, they nevertheless constituted in law no offense of which they could find the defendant guilty. His Honor refused this prayer, and instructed the jury that if the facts charged were proved to their satisfaction, it was their duty to find him guilty. The same ground of defense has been taken here by way of a motion in arrest of judgment; but we are of opinion that in whatever form presented, it is not tenable.
The argument is, that the offense of riding or going about armed with unusual and dangerous weapons, to the terror of the people, was created by the statute of Northampton, 2 Edward III, ch. 3, and that, whether this statute was or was not formerly in force in this State, it certainly has not been since the first of January, 1838, at which day it is declared in the Revised Statutes, ch. 1, sec. 2, that the statutes of England or Great Britain shall cease to be of force and effect here. We have been accustomed to believe, that the statute referred to did not create this offense, but provided only special penalties and modes of proceeding for its more effectual suppression, and of the correctness of this belief we can see no reason to doubt. All the elementary writers, who give us any information on the subject, concur *Page 286 
in this representation, nor is there to be found in them, as far as we are aware of, a dictum or intimation to the contrary. Blackstone states that "the offense of riding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying (421) the good people of the land; and is particularly prohibited by the statute of Northampton, 2 Edward III., ch. 3, upon pain of forfeiture of the arms, and imprisonment during the King's pleasure." 4 Bl. Com., 149. Hawkins, treating of offenses against the public peace under the head of "Affrays," pointedly remarks, "but granting that no bare words in judgment of law carry in them so muchterror as to amount to an affray, yet it seems certain that in some cases there may be an affray, where there is no actual violence, as where a man arms himself with dangerous and unusual weapons in such a manner as will naturally cause a terror to the people, which is said to havebeen always an offense at common law and strictly prohibited by many statutes." Hawk. P. C., B. 1, ch. 28, sec. 1. Burns Tomlyns informs us that this term "Affray" is derived from the French word "effrayer,"
to affright, and that anciently it meant no more, "as where persons appeared with armour or weapons not usually worn, to the terror of others." Burns' Verbo "Affray." Dier do. It was declared by the Chief Justice in Sir John Knight's case, that the statute of Northampton was made in affirmance of the common law. 3 Mod., 117. And this is manifestly the doctrine of Coke, as will be found on comparing his observations on the word "Affray," which he defines (3 Just., 158) "a public offense to the terror of the King's subjects, and so called because it affrighteth and maketh men afraid, and is enquirable in a leet as a common nuisance," with his reference immediately thereafter to this statute, and his subsequent comments on it (3 Inst., 160), where he cites a record of 29 Edward I., showing what had been considered the law then. Indeed, if those acts be deemed by the common law crimes and misdemeanors, which are in violation of the public rights and of the duties owing to the community in its social capacity, it is difficult to imagine any which more unequivocally deserve to be so considered than the acts charged upon this defendant. They attack directly that public order and sense of security, which it is one of the first objects of the common law, and ought (422) to be of the law of all regulated societies to preserve inviolate — and they lead almost necessarily to actual violence. Nor can it for a moment be supposed that such acts are less mischievous here or less the proper subjects of legal reprehension, than they were in the country of our ancestors. The bill of rights in this State secures to every man, indeed, the right to "bear arms for the defense of the State." While it secures to him a right of which he cannot be deprived, *Page 287 
it holds forth the duty in execution of which that right is to be exercised. If he employs those arms, which he ought to wield for the safety and protection of his country, to the annoyance and terror and danger of its citizens, he deserves but the severer condemnation for the abuse of the high privilege with which he has been invested.
It was objected below, and the objection has been also urged here, that the Court erred in admitting evidence of the declarations of the defendant, set forth in the case, because those, or some of them, at least, were acknowledgements of a different offense from that charged. But these declarations were clearly proper, because they accompanied, explained, and characterized the very acts charged. They were not received at all asadmissions either of the offense under trial, or any other offense. They were constituent parts of that offense.
It has been remarked that a double-barrel gun, or any other gun, cannot in this country come under the description of "unusual weapons," for there is scarcely a man in the community who does not own and occasionally use a gun of some sort. But we do not feel the force of this criticism. A gun is an "unusual weapon," wherewith to be armed and clad. No man amongst us carries it about with him, as one of his everyday accoutrements — as a part of his dress — and never, we trust, will the day come when any deadly weapon will be worn or wielded in our peace-loving and law-abiding State, as an appendage of manly equipment. But although a gun is an "unusual weapon," it is to be remembered that the carrying of a gun, per se, constitutes no offense. For any lawful purpose — either of business or amusement — the citizen is at perfect liberty to carry his gun. It is (423) the wicked purpose, and the mischievous result, which essentially constitute the crime. He shall not carry about this or any other weapon of death to terrify and alarm, and in such manner as naturally will terrify and alarm a peaceful people.
PER CURIAM. No error.
Cited: S. v. Brandon, 53 N.C. 466; S. v. Lanier, 71 N.C. 289; S. v.Norton, 82 N.C. 630; S. v. Vann, Ib., 634; S. v. Roten, 86 N.C. 704; S.v. McNair, 93 N.C. 630; S. v. Smith, 125 N.C. 623; S. v. Griffin, Ib., 693. *Page 288 
(424)