IN THE MATTER OF MELINDA REGINA DRAKEFORD

No. 7626DC566

(Filed 5 January 1977)

1. Constitutional Law § 34; Criminal Law § 26; Infants § 10— successive juvenile proceedings — double jeopardy

The constitutional prohibition against double jeopardy applies to successive juvenile proceedings.

**2. Criminal Law § 26— test of double jeopardy**

    The test of former jeopardy is not whether defendant has been tried for the same *act,* but whether he has been put in jeopardy for the same *offense.*

**3. Criminal Law § 26; Infants § 10— juvenile petitions — acquittal of assault — conviction of affray — double jeopardy**

    Where a juvenile delinquency petition alleging that respondent assaulted a fellow student on board a school bus with a razor blade in violation of G.S. 14-33(b)(1) was dismissed for lack of evidence, respondent was twice put in jeopardy for the same offense when she was adjudicated delinquent upon a subsequent petition based on the same incident alleging that she committed an affray in violation of G.S. 14-33(a) by assaulting a fellow student on board a school bus with a razor blade, since the assault was an essential element of the affray charge, and respondent's acquittal on the assault charge barred further petitions based on that charge.

APPEAL by respondent from adjudicatory order of 27 January 1976 by *Black, Judge,* and dispositive order of 11 February 1976 by *Hasty, Judge.* Both orders entered in District Court, MECKLENBURG County. Heard in the Court of Appeals 18 November 1976.

On 6 November 1975, a petition was filed alleging that Melinda Regina Drakeford (hereinafter called "respondent") was a delinquent child as defined by G.S. 7A-278(2) and that on 20 October 1975, she assaulted a fellow student with a razor blade in violation of G.S. 14-33(b)1. The alleged incident took place while respondent was aboard a school bus en route to her junior high school. At a hearing on 25 November 1976, the petition was dismissed for lack of sufficient evidence.

Also on 25 November 1976, another petition was filed against respondent, alleging that on 20 October 1975 she committed an affray in violation of G.S. 14-33(a) by assaulting a fellow student on board the school bus with a razor blade. Respondent filed a plea of former jeopardy, and on 27 January 1976, a hearing on the second petition was held. The court denied respondent's motion of former jeopardy and found " . . . that the juvenile did in fact beyond a reasonable doubt make an affray to the terror and disturbance of other students . . . and adjudicate[d] respondent delinquent by reason thereof." On 11 February, the district court ordered that respondent be placed on probation for one year upon certain conditions.

Other relevant facts are set out in the opinion below.

In re Drakeford

*Attorney General Edmisten, by Associate Attorney Wilton E. Ragland, Jr., for the State.*

*Mecklenburg Public Defender Michael S. Scofield, by Assistant Public Defender James Fitzgerald, for respondent appellant.*

MORRIS, Judge.

In the sole assignment of error brought forward in her brief, respondent claims that the trial judge erred in denying her motion to dismiss. She contends that the assault charge in the initial juvenile petition was an essential element in the affray alleged in the subsequent petition and that, therefore, her plea of former jeopardy should have been sustained.

[1] The issue of whether the constitutional prohibition against double jeopardy applies to successive juvenile proceedings is a question of first impression in this jurisdiction. Traditionally, juvenile proceedings instituted pursuant to G.S. 7A-277, et seq., have not been considered to be synonymous with criminal trials. "Whatever may be their proper classification, they [juvenile proceedings] certainly are not 'criminal prosecutions'. Nor is a finding of delinquency in a juvenile proceeding synonymous with 'conviction of a crime'." *In re Burrus,* 275 N.C. 517, 529, 169 S.E. 2d 879, 886-87 (1969), *aff'd. sub. nom., McKeiver v. Penn.,* 403 U.S. 528, 29 L.Ed. 2d 647, 91 S.Ct. 1976 (1971). Thus, while minors may not be totally deprived of certain due process rights in juvenile proceedings, *In re Gault,* 387 U.S. 1, 18 L.Ed. 2d 527, 87 S.Ct. 1428 (1967), the full gamut of constitutional guarantees has never been required. Our Supreme Court has held, for instance, that a public hearing and a jury trial are not required by the Constitution in juvenile actions. *In re Burrus, supra.* Similarly, other jurisdictions, adopting the traditional notion that juvenile proceedings are dissimilar to criminal prosecutions, have held that juvenile proceedings are not "jeopardy" and therefore cannot create problems with regard to double jeopardy. See, e.g., *Moquin v. State,* 216 Md. 524, 140 A. 2d 914 (1957).

We find the recent case of *Breed v. Jones,* 421 U.S. 519, 44 L.Ed. 2d 346, 95 S.Ct. 1779 (1975), to be particularly analogous to the case *sub judice.* There a petition was filed in the juvenile courts of California alleging that respondent Jones had committed acts which, if committed by an adult, would

constitute robbery under California law. A hearing was held on the matter, and the juvenile court sustained the allegations in the petition. Respondent, however, was subsequently found to be unfit for treatment as a juvenile, prosecuted as an adult and found guilty of robbery. He filed a petition of habeas corpus, claiming that the trial of his case as an adult placed him twice in jeopardy for the same offense. The District Court denied the petition, but the Ninth Circuit Court of Appeals reversed, holding that jeopardy had attached in the juvenile proceedings. *Breed v. Jones,* 497 F. 2d 1160 (9th Cir. 1974). On certiorari, the Supreme Court held that the adjudication in juvenile court constituted a trial so as to establish double jeopardy in a subsequent adult trial for the same offense. In holding that the juvenile adjudicatory proceeding was sufficiently similar to a trial for the purposes of jeopardy, the Court discussed traditionally-held notions regarding juvenile proceedings.

> "Although the juvenile court system had its genesis in the desire to provide a distinctive procedure and setting to deal with the problems of youth, including those manifested by antisocial conduct, our decisions in recent years have recognized that there is a gap between the originally benign conception of the system and its realities. With the exception of *McKeiver v. Pennsylvania,* 403 U.S. 528 (1971), the Court's response to that perception has been to make applicable in juvenile proceedings constitutional guarantees associated with traditional criminal prosecutions. *In re Gault,* 387 U.S. 1 (1967); *In re Winship,* 397 U.S. 358 (1970). . . .

> We believe it is simply too late in the day to conclude, as did the District Court in this case, that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years. For it is clear under our cases that determining the relevance of constitutional policies, like determining the applicability of constitutional rights, in juvenile proceedings, requires that courts eschew 'the "civil" label-of-convenience which has been attached to juvenile proceedings,' *In re Gault, supra,* at 50, and that 'the juvenile process . . . be candidly appraised.' 387 U.S.,

at 21. See *In re Winship, supra,* at 365-366." 421 U.S. at 528-29, 44 L.Ed. 2d at 355, 95 S.Ct. at 1785.

[1]   Although the Supreme Court in *Breed* was concerned with a juvenile proceeding followed by an adult trial, the rule of the case is based on the determination that jeopardy attached to the initial juvenile proceeding. Therefore, the principle is equally applicable where, as here, one juvenile action is followed by another.

Juvenile proceedings in North Carolina do more than merely determine the delinquency of the minor; they may result in severe curtailment of his freedom and, in some cases, in institutional commitment. Although we do not obliterate all distinctions between juvenile proceedings and criminal prosecutions, we believe, and so hold, that they are sufficiently similar in nature that the double jeopardy provisions of the United States and North Carolina Constitutions are applicable to them. Accordingly, jeopardy attached to the initial petition once an adjudicatory hearing on the merits was held. We must now consider whether the adjudication on the subsequent petition twice put respondent in jeopardy for the same offense.

G.S. 14-33(b), which formed the basis for the initial juvenile petition, provides:

"Unless his conduct is covered under some other provision of law providing greater punishment, any person who commits any assault, assault and battery, or affray is guilty of a misdemeanor punishable by a fine, imprisonment for not more than two years, or both such fine and imprisonment if, in the course of the assault, assault and battery, or affray, he:

(1) Inflicts, or attempts to inflict, serious injury upon another person or uses a deadly weapon . . . "

After this petition was dismissed for lack of sufficient evidence, the second petition was filed. It was based on G.S. 14-33(a) which states:

"Any person who commits a simple assault or a simple assault and battery or participates in a simple affray is guilty of a misdemeanor punishable by a fine not to exceed fifty dollars ($50.00) or imprisonment for not more than 30 days."

An affray is defined by the common law as a fight between two or more persons in a public place so as to cause terror to the people. *State v. Huntley,* 25 N.C. 418 (1843) ; 2A C.J.S., Affray, § 2, p. 518. Any party charged with an affray may be charged with the lesser included offense of an assault. *State v. Wilson,* 61 N.C. 237 (1867).

The initial petition alleged that on 20 October 1975 respondent

" . . . did unlawfully and wilfully assault Mamie Hicklin (who was aboard school bus # 509 for Carmel Rd. Jr. High) with a razor blade, a deadly weapon, by cutting her on the left side of her face from the forehead to the bottom of her chin. Mamie Hicklin required treatment at Charlotte Memorial Hospital."

The second petition against respondent alleged that on 20 October 1975 she

" . . . did unlawfully and wilfully make an affray to the terror and disturbance of other students on school bus # 509, a public school bus which was stopped on a public street. At such public place the child and Mamie Hicklin did assault each other, to wit: Melinda cut Mamie Hicklin on the left side of her face from the forehead to the bottom of her chin with a razor blade, causing her to receive treatment of Charlotte Memorial Hospital."

[2] It is obvious that both petitions arose from the same incident. This does not, however, automatically require a finding that jeopardy has twice attached. The test of former jeopardy is not whether respondent has been tried for the same *act,* but whether he has been put in jeopardy for the same *offense. State v. Barefoot,* 241 N.C. 650, 86 S.E. 2d 424 (1955) ; *State v. Anderson,* 9 N.C. App. 146, 175 S.E. 2d 729 (1970). The offenses must be the same both in fact and in law. *State v. McIntosh,* 260 N.C. 749, 133 S.E. 2d 652 (1963), *cert. den.,* 377 U.S. 939, 12 L.Ed. 2d 302, 84 S.Ct. 1345 (1964).

A situation similar to the one at hand was presented in *State v. Midyette,* 270 N.C. 229, 154 S.E. 2d 66 (1967). There, the defendant was convicted on two indictments. The first charged him with assault with a deadly weapon with intent to kill inflicting serious bodily injuries not resulting in death. It arose out of an incident on 25 June 1966 in which police

officer W. I. Robertson was shot with a .22 calibre pistol. Defendant was charged in the second indictment with resisting, delaying and obstructing a public officer in the discharge of his duty by firing at W. I. Robertson with a .22 calibre pistol on 25 June 1966. Our Supreme Court arrested judgment on the second indictment, stating:

> "By the allegations it elects to make in an indictment, the State may make one offense an essential element of another, though it is not inherently so, as where an indictment for murder charges that the murder was committed in the perpetration of a robbery. In such case, a showing that the defendant has been previously convicted, or acquitted, of the robbery so charged will bar his prosecution under the murder indictment. . . . " 270 N.C. at 233, 154 S.E. 2d at 70.

The Court then held that since defendant could not be convicted upon the charge of resisting a public officer without first being convicted on the assault charge, the judgment on the greater charge must be arrested.

[3] In the case *sub judice,* the affray charge upon which respondent was convicted had as an essential element the assault charge which had been dismissed for lack of evidence. Consequently, respondent's acquittal on the assault charge barred further petitions based on that charge. We believe, therefore, that respondent was twice put in jeopardy for the same offense and that the trial judge erred in failing to dismiss the petition of 25 November 1975.

For the reasons stated above, the judgment is vacated and the cause remanded for entry of order dismissing the petition.

Vacated and remanded.

Judges CLARK and ARNOLD concur.