IN THE MATTER OF: CHRISTOPHER B. REGISTER, KEVIN SCOTT MORGAN, KELLY STARNES, JOHN W. CRANDELL

No. 865DC713

(Filed 17 February 1987)

1. **Infants § 10— seventeen infants involved in vandalism — eight selected for prosecution — inability to pay restitution as basis for prosecution**

     The trial court erred in failing to dismiss petitions against respondent juveniles based on their alleged vandalism of a residence where the record affirmatively disclosed that seventeen juveniles were involved in the vandalism, but only eight were selected for prosecution based on their or their parents' unwillingness or inability to pay $1,000 each to the victim.

2. **Infants § 10— filing of juvenile petition — procedure**

     Before a juvenile petition may be filed charging any juvenile with being delinquent or undisciplined, the record must affirmatively disclose that either the intake counselor or the district attorney has approved the filing of such petition; furthermore, when the district attorney approves the filing of such petition, the record must affirmatively disclose that the intake counselor has theretofore disapproved the filing.

3. **Infants § 18— juvenile proceedings — court's acceptance of admissions from juveniles — failure of court to meet statutory requirements**

     In a juvenile proceeding where respondents were alleged to be delinquent because of various acts of vandalism committed against the same victim, the trial judge failed to meet the requirements of N.C.G.S. § 7A-633 with regard

to accepting admissions from the juveniles where the judge did not make the required inquiries of each child *individually*, neglected to inform any of the juveniles of their right to remain silent and that their statements could be used against them, neglected to inform them that by admitting the charges they waived their right to be confronted by the witnesses against them, and failed to ask two of the children if they understood the nature of the charges against them.

**4. Infants § 19— children accused of vandalism—failure to find proof beyond reasonable doubt**

In a juvenile proceeding where respondents were alleged to be delinquent because of various acts of vandalism committed against the same victim, the trial judge erred in failing to find, pursuant to N.C.G.S. § 7A-635, that the allegations of the petition had been proved beyond a reasonable doubt; furthermore, it was doubtful that the record would have supported such a finding against two eight-year-olds and one nine-year-old, and the court, at common law, could not have found a six-year-old guilty beyond a reasonable doubt.

**5. Infants § 20— children from 6 to 14 accused of vandalism—identical judgments entered against each—failure to consider dispositional alternatives**

The trial court in a juvenile proceeding failed to follow the provisions of N.C.G.S. § 7A-646 with regard to dispositional alternatives where the court entered identical judgments in all cases involving eight juveniles who ranged in age from 6 to 14, were found to have committed and admitted committing different offenses, and had varying degrees of culpability; and there was nothing in the record to indicate that the court heard and considered any evidence as to the most appropriate dispositional order in each case.

**6. Infants § 20— children accused of vandalism—ordering restitution from each improper**

The trial court in a juvenile proceeding erred in requiring $1,000 in restitution of each juvenile who was accused of vandalism, since reimbursing the victim for her financial loss seemed to be the overriding concern of everyone in the cases, and the amount of restitution, rather than being individually determined, was based on the limit of the parents' civil liability for damage "maliciously or willfully" done to property by a juvenile pursuant to N.C.G.S. § 1-538.1.

Judge GREENE concurring.

APPEAL by respondents from *Burnett, Judge.* Orders entered 4 February 1986 in District Court, NEW HANOVER County. Heard in the Court of Appeals 15 December 1986.

These are juvenile proceedings wherein petitions were filed in January 1986 alleging that each of these juveniles are delinquent because they had committed the following offenses: 1) Petition No. 86J0016 alleged that Christopher Register, age fourteen, broke and entered the residence of Judy Radliff located at 539

Cathay Road, Wilmington, North Carolina and threw "a brick through a window"; 2) Petition No. 86J0023 alleged that Kevin Morgan, age eight, broke and entered the residence of Judy Radliff with intent to commit larceny and stole "1 B.B. pistal [sic] & McDonald watch . . . having a total value of $13.00"; 3) Petition No. 86J0022 alleged that Kelly Starnes, age eight, broke and entered the residence of Judy Radliff, broke and entered it on another occasion with the intent to commit larceny, and stole "a Barbie doll & clothes . . . having a total value of $12.00"; 4) Petition No. 86J0019 alleged that John Crandell, age fourteen, broke and entered the residence of Judy Radliff and "injured" her house, furnishings and personal property by "knocking holes in walls, shooting out windows with a B.B. gun, by destroying appliances, pouring paint on the carpet and damaging furniture."

[The foregoing four juveniles were tried together with Amanda Croom, age six, and Jessica Bailey, age nine. Petition No. 86J0021 alleged that Amanda Croom was delinquent because she had broke and entered the residence of Judy Radliff with the intent to commit larceny and stole "one baton . . . having a total value of unknown." Petition No. 86J0020 alleged that Jessica Bailey was delinquent because she broke and entered the residence of Judy Radliff with the intent to commit larceny and stole "1 pocketbook . . . having a total value of $5.00." The decision in the appeal of Amanda Croom and Jessica Bailey, No. 865DC607, is being filed simultaneously with the filing of the decision in these four appeals. When we, in the course of this opinion, refer to "these cases" we are referring to the cases and appeals of all six juveniles.]

At the adjudicatory hearing, each of the juveniles answered the allegations in the petitions as follows: Christopher Register admitted committing misdemeanor breaking and entering and throwing a brick through a window; Kevin Morgan, Kelly Starnes, Jessica Bailey and Amanda Croom admitted committing misdemeanor breaking and entering and misdemeanor larceny; and John Crandell admitted committing misdemeanor breaking and entering. The allegation that John Crandell had injured personal property was dismissed by the State.

Following a hearing involving the juveniles in all these cases and two other juveniles who did not appeal, the court entered or-

ders finding that each juvenile had committed the offense that he or she had admitted committing, concluded as a matter of law that each juvenile was delinquent and entered the following dispositional order in each of these cases:

That [he/she] is placed on six months probation according to the terms of the probation judgment.

That [he/she] is to read Youth and Law.

That [he/she] is to pay $1,000.00 restitution to Mrs. Judy Radliff.

These six respondents appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Cathy J. Rosenthal, for the State.*

*Kenneth B. Hatcher for respondent, appellant Christopher B. Register.*

*Andrew L. Waters for respondent, appellant Kevin Scott Morgan.*

*Regina Floyd-Davis for respondent, appellant Kelly Starnes.*

*Northrope D. Rice for respondent, appellant John W. Crandell.*

HEDRICK, Chief Judge.

Because of the discussion to follow regarding the payment of compensation to Mrs. Radliff for damages done to her house in these and other cases, it is necessary and appropriate to point out that we are not in the least critical of Mrs. Radliff's efforts to be compensated for the extensive damage done to her home and personal property. We understand her agony and support the proposition that victims of crime should be compensated whenever possible. We endorse the discriminate and prudent use of restitution in juvenile cases as provided in G.S. 7A-649, but compensation of victims should never become the only or paramount concern in the administration of juvenile justice.

The evidence in the record before us tends to show the following: During the last two weeks in August 1985, Mrs. Judy Radliff and her children were away from their home in Wilming-

ton, North Carolina, because Mrs. Radliff was working in South Carolina. Sometime between 17 August 1985 and 1 September 1985, her house was broken into and virtually demolished. Mrs. Radliff returned home to find that windows were broken, paint was smeared over a sliding glass door and the interior walls, debris was on the floor, furniture and appliances were damaged, and items of personal property were missing. There is little in the record to establish the exact amount of damage, but a figure of $17,000 does not seem unreasonable.

When Mrs. Radliff returned home and discovered the damage she called the New Hanover County Sheriff's Department. Apparently, Wilma Jones, a juvenile investigator for the sheriff's department, made the investigation and learned that Mrs. Radliff's home was allegedly vandalized by seventeen juveniles, ranging from six to fourteen years in age. The four juveniles involved in these cases and the two in the companion cases, were six of the seventeen children allegedly involved in the destruction of Mrs. Radliff's home.

Some of the contentions raised on appeal by counsel for the various respondents are as follows: 1) The trial court erred in denying respondent's motion to dismiss the petitions due to prosecutorial misconduct and selective prosecution; 2) the trial court erred in ordering Christopher Register to pay $1,000 restitution in violation of his Constitutional rights to due process and equal protection; 3) the court erred in ordering Kelly Starnes, Jessica Bailey, Amanda Croom and Kevin Morgan to pay $1,000 in restitution when they were not alleged to have caused property damage; and 4) the court erred in ordering each respondent to pay $1,000 restitution where there was no evidence or finding that each juvenile caused damage to that extent and no finding that they had the means to pay restitution. All of respondents' contentions have merit.

The briefs for the State are perfunctory and provide little assistance to the Court. For example, in its brief the State asserts, "Respondents' contentions that the District Attorney deliberately diverted the charges against those juveniles who had the ability to pay $1,000 restitution to the victim Judy Radliff is belied by the record." It is the record that shows that these juveniles were prosecuted simply because they or their parents

were unwilling or unable to pay $1,000 each to compensate for the damage done to the Radliff home.

[1] To maintain a defense of selective prosecution, a defendant must show more than simply that discretion has been exercised in the application of a law resulting in unequal treatment among individuals; he must show that in the exercise of that discretion there has been intentional or deliberate discrimination by design. *State v. Spicer,* 299 N.C. 309, 261 S.E. 2d 863 (1980); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962).

The record before us discloses that each of these respondents received unequal treatment among individuals who were alleged to have committed the same or similar offenses by design. The record affirmatively discloses that each respondent was prosecuted because he or she, or his or her parents, was unwilling or unable to pay $1,000 compensation to Mrs. Radliff while other juveniles similarly situated were not prosecuted because they, or their parents, were able or willing to pay $1,000 to the complainant.

The purpose of the North Carolina Juvenile Code is described in G.S. 7A-516 as follows:

This Article shall be interpreted and construed so as to implement the following purposes and policies:

(1) To divert juvenile offenders from the juvenile system through the intake services authorized herein so that juveniles may remain in their own homes and may be treated through community-based services when this approach is consistent with the protection of the public safety;

(2) To provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents; and

(3) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the child, the strengths and weaknesses of the family, and the protection of the public safety.

Article 43 of the juvenile code provides for the "screening of delinquency and undisciplined petitions" through intake services.

The purpose of intake services is defined in G.S. 7A-530 as follows:

> The Chief Court Counselor, under the direction of the Administrator of Juvenile Services, shall establish intake services in each judicial district of the State for all delinquency and undisciplined cases.

> The purpose of intake services shall be to determine from available evidence whether there are reasonable grounds to believe the facts alleged constitute a delinquent or undisciplined offense within the jurisdiction of the court, to determine whether the facts alleged are sufficiently serious to warrant court action and to obtain assistance from community resources when court referral is not necessary. The intake counselor shall not engage in field investigations to substantiate complaints or to produce supplementary evidence but may refer complainants to law-enforcement agencies for those purposes.

G.S. 7A-531 provides, in pertinent part, that when a complaint is received, the intake counselor shall make a preliminary inquiry to determine whether the juvenile is within the jurisdiction of the court as a delinquent or undisciplined juvenile and the legal sufficiency of the facts alleged. The statute further provides that "[w]hen requested by the intake counselor, the prosecutor shall assist in determining the sufficiency of evidence as it affects the quantum of proof and the elements of offenses." G.S. 7A-532 provides that upon a finding of legal sufficiency, except in certain "nondivertible offenses" set out in G.S. 7A-531, the intake counselor "shall determine whether a complaint should be filed as a petition, the juvenile diverted to a community resource, or the case resolved without further action." The statute further provides that in making this decision, the intake counselor shall consider criteria which shall be provided by the Administrator of Juvenile Services and, if practicable, conduct interviews with the complainant or victim, the juvenile, his parents, guardian or custodian, and with persons known to have information about the juvenile or his family, if pertinent. G.S. 7A-533 provides that the intake counselor must evaluate the petition within fifteen days, with an extension for a maximum of fifteen additional days, and

decide whether a complaint will be filed as a juvenile petition. This statute further provides, in pertinent part, as follows:

> . . . If the intake counselor determines that a complaint should be filed as a petition, he shall assist the complainant when necessary with the preparation and filing of the petition, or help with the preparation and filing of the petition, shall endorse on it the date and the words "Approved for filing," shall sign it beneath such words, and shall transmit it to the clerk of superior court. If the intake counselor determines that a petition should not be filed, he shall immediately notify the complainant in writing with reasons for his decision and shall include notice of the complainant's right to have the decision reviewed by the prosecutor. The intake counselor shall then sign his name on the complaint beneath the words "Not approved."
>
> Any complaint not approved for filing as a juvenile petition shall be destroyed by the intake counselor after holding the complaint for a temporary period to allow follow-up and review as provided in G.S. 7A-534 and 7A-536.

G.S. 7A-535 provides that within five calendar days after receipt of the intake counselor's decision not to approve the filing of the complaint as a petition, the complainant may request review of the decision by the prosecutor. Pursuant to G.S. 7A-536, such review by the prosecutor shall include conferences with the complainant and the intake counselor. At the conclusion of the review, the prosecutor shall "affirm the decision of the intake counselor or direct the filing of a petition." The pleading in a juvenile action is the petition. G.S. 7A-559.

For reasons not readily ascertainable from the record before us, the district attorney injected his office into these cases when on 9 October 1985 he sent the following communication on his official stationery, apparently to the intake officer:

> If the Intake Officer, Phyllis Roebuck, and victim, Judy Radliff, deems it appropriate, the State will consent to the diversion of any case involving damage to the property of Judy Radliff upon the condition that pro-rata restitution in

the amount of $1,000.00 has been paid by or on behalf of the juvenile whose case is diverted.

s/JERRY SPIVEY
Jerry L. Spivey
District Attorney

The juvenile code makes it clear that the district attorney's involvement in cases charging juveniles with being undisciplined or delinquent, before the juvenile petition is filed, is limited to 1) assisting the intake counselor, when requested, during the preliminary inquiry in determining the legal sufficiency of the evidence, G.S. 7A-531, and 2) reviewing the decision of the intake counselor not approving the filing of a juvenile petition, and to affirm the decision of the intake counselor or direct the filing of a petition himself. G.S. 7A-536.

It is evident that the district attorney's premature involvement in these cases by the memo dated 9 October 1985, contributed to the many errors that followed. At the adjudicatory hearing in these cases, Mrs. Radliff testified on cross-examination as follows:

Q. Now you and the District Attorney and some other parties made an agreement as to paying restitution to some extent, is that correct?

A. Yes.

Q. And what was the nature of that agreement?

A. That everyone would pay $1,000.00.

Q. Ok, and what if a party wasn't able to pay $1,000.00?

A. Well, that is not for me to decide.

Q. Well, as in relation to the ones who paid the $1,000.00, was the agreement that the charges against them would be dismissed?

A. If they paid the $1,000.00?

Q. Yes.

A. Yes.

Q. Ok, and as to those who did not pay the $1,000.00 or could not, was the agreement that they would be prosecuted?

A. Yes.

Q. And you engaged in this conversation with what parties?

A. I don't understand what you are saying.

Q. Who were the people who were involved with the agreement, was the prosecutor involved in that, Mr. Spivey, Jerry Spivey?

A. I didn't talk to him personally about that.

Q. Do you remember talking with an intake officer, do you know if that was the person that you talked to?

A. I talked to Ms. Roebuck.

Q. Was anyone else present when you all had that discussion?

A. I don't think so.

From the record before us, it appears that seventeen juveniles were involved in the vandalism of Mrs. Radliff's home. Petitions were filed against at least eight of the juveniles allegedly involved. These eight juveniles were tried together. Six of these cases are on appeal herein. Apparently, two respondents did not appeal. The record discloses that at least six of the seventeen juveniles had "paid out" at the time of the hearing. One other juvenile had agreed to pay and at the time of the hearing had not paid, but that juvenile was not put on trial. Thus, it appears that a total of seven juveniles had their cases dismissed or petitions were not filed against them simply because they were willing and able to pay $1,000 each to Mrs. Radliff pursuant to the agreement described in her testimony. From the above, it is clear to us that the juveniles in these cases were prosecuted simply because they were unwilling or unable to pay $1,000 each for damage done to Mrs. Radliff's home. Some of the seventeen juveniles involved in the destruction of Mrs. Radliff's home were willing and able to pay their proportionate share of the damages and were not prosecuted. The record before us affirmatively discloses that eight juveniles, including the six in these cases, were selected for pros-

ecution by design based on their, or their parents', unwillingness or inability to pay $1,000 each to Mrs. Radliff. Surely, the purposes of the legislature in adopting our juvenile code are not served by making the willingness or ability of a juvenile to pay compensation the determinative factor in the decision of whether to file a complaint as a juvenile petition. This, in our opinion, is selective prosecution.

At the hearing, Judge Burnett made the following statement, "I gathered from what Mr. water's [sic] has said that all of these cases have been through intake." The record belies that statement. There is nothing in the record to indicate that the intake counselor made any preliminary inquiry or evaluation of any of these cases pursuant to the provisions of G.S. 7A-531 and G.S. 7A-532. Each juvenile petition in these cases contains a section on the form to indicate the evaluation decision of the intake counselor in accordance with the provisions of G.S. 7A-533. This section of the form contains boxes beside the words "Approved for Filing" and "Not Approved" and a line for the signature of the intake counselor. The intake counselor did not complete or sign this portion of any of the juvenile petitions in these cases. The intake counselor, Ms. Roebuck, is mentioned only two times in the 188 pages comprising the records and transcript in these cases; first, in the testimony of Mrs. Radliff heretofore referred to, and second, in the 9 October 1985 memo signed by the district attorney. It is unfortunate that the judge apparently did not determine whether the cases had "been through intake." We cannot overemphasize the importance of the intake counselor's evaluation in cases involving juveniles alleged to be delinquent or undisciplined. The role of an intake counselor is to ensure that the needs and limitations of the juveniles and the concern for the protection of public safety have been objectively balanced before a juvenile petition is filed initiating court action. The district attorney preempted any action upon the part of the juvenile court counselor, and his action might account for the fact that the intake counselor took no action in these cases, but it does not excuse it nor did such preemptive action upon the part of the district attorney authorize the juvenile court to proceed against these juveniles.

[2]  We hold that before a juvenile petition may be filed charging any juvenile with being delinquent or undisciplined, the record

must affirmatively disclose that either the intake counselor or the district attorney has approved the filing of such petition. Furthermore we hold that when the district attorney approves the filing of such petition, the record must affirmatively disclose that the intake counselor has theretofore disapproved the filing. In these cases, the record does not indicate that the intake counselor or district attorney approved the filing of the juvenile petitions. The record before us does not show that the intake counselor disapproved the filing. Had the procedure described above with respect to the responsibilities and duties of the intake counselor and district attorney been followed in these cases, all of the seventeen juveniles would have received equal treatment under the law, and these respondents would not have been subjected to selective prosecution, while the other juveniles involved were not prosecuted. We hold the trial court erred in not dismissing all of the petitions against these juveniles, on motion of the respondents or *ex mero motu*, when the matters described above came to its attention.

We proceed now to discuss other serious errors appearing in the records before us.

G.S. 7A-633 provides, in pertinent part, as follows:

(a) A judge may accept an admission from a juvenile only after first addressing him personally and

(1) Informing him that he has a right to remain silent and that any statement he makes may be used against him;

(2) Determining that he understands the nature of the charge;

(3) Informing him that he has a right to deny the allegations;

(4) Informing him that by his admissions he waives his right to be confronted by the witnesses against him;

(5) Determining that the juvenile is satisfied with his representation; and

(6) Informing him of the most restrictive disposition on the charge.

(b) By inquiring of the prosecutor, the juvenile's attorney, and the juvenile personally, the judge shall determine whether there were any prior discussions involving admissions, whether the parties have entered into any arrangement with respect to the admissions and the terms thereof, and whether any improper pressure was exerted. The judge may accept an admission from a juvenile only after determining that the admission is a product of informed choice.

[3]   In all of these cases, the juveniles "admitted," pleaded guilty, to some of the charges alleged in the juvenile petitions. While the judge made inquiry of the respondents as to some of the matters and things required by G.S. 7A-633(a), he neglected to inform any of the juveniles of their right to remain silent and that their statements could be used against them, or that by admitting the charges they waived their right to be confronted by the witnesses against them. He also failed to ask respondents Amanda Croom and Kevin Morgan if they understood the nature of the charges against them. The judge asked all of the juveniles as a group if they were satisfied with their lawyers. This is just another example of the problems raised by the court's attempt to hear all of these cases at the same time without regard to the ages of the individual juveniles or the offenses they were alleged to have committed. We believe the better practice would be for the trial judge to address each juvenile individually. It is the duty of the trial judge in carrying out the requirements of G.S. 7A-633 to give each child individual attention. It is impossible for the judge to determine "that the admission is a product of informed choice," without making the required inquiries of each child individually.

[4]   G.S. 7A-635 provides, in pertinent part, that "[t]he allegations of a petition alleging the juvenile is delinquent shall be proved beyond a reasonable doubt." G.S. 7A-637 further provides, in part, that "[i]f the judge finds that the allegations in the petition have been proved as provided in G.S. 7A-635, he shall so state." The order of the trial judge must affirmatively state that the allegations are proved beyond a reasonable doubt, even in cases where the juvenile admits the offense alleged. See, In re Johnson, 32 N.C. App. 492, 232 S.E. 2d 486 (1977).

In none of these cases did Judge Burnett find that the allegations in the petition had been proved "beyond a reasonable

doubt." Indeed, in the cases of Kelly Starnes, age eight, Kevin Morgan, age eight, and Jessica Bailey, age nine, it is doubtful whether the record would support such a finding. At common law, the court could not have found Amanda Croom, age six, guilty beyond a reasonable doubt because a juvenile under age seven could not be charged with, found guilty of and punished for a criminal offense, because of the irrebuttable presumption that she was *doli incapax, State v. Yeargan*, 117 N.C. 706, 23 S.E. 153 (1895). We realize that the juvenile court has jurisdiction over children age six, but we do not believe the juvenile court had authority in this case to find Amanda Croom to be delinquent because she had been found to have committed breaking or entering and larceny of "one baton . . . value of unknown."

[5] G.S. 7A-646 provides, in part, that the purpose of dispositions in juvenile actions is to "design an appropriate plan to meet the needs of the juvenile and to achieve the objectives of the State in exercising jurisdiction." This statute further provides, in pertinent part, as follows:

> In choosing among statutorily permissible dispositions for a delinquent juvenile, the judge shall select the least restrictive disposition both in terms of kind and duration, that is appropriate to the seriousness of the offense, the degree of culpability indicated by the circumstances of the particular case and the age and prior record of the juvenile.

G.S. 7A-649 lists the dispositional alternatives for delinquent juveniles and provides, in part, that the judge may "[r]equire restitution, full or partial, payable within a 12-month period to any person who has suffered loss or damage as a result of the offense committed by the juvenile." G.S. 7A-649(2).

In entering the dispositional orders in these cases, it is clear that the judge did not follow the foregoing provisions in the juvenile code. It is clear that the court failed to consider the express purposes of the juvenile code where it entered identical judgments in all these cases wherein the juveniles ranged in age from six to fourteen, were found to have committed and admitted committing different offenses and had varying degrees of culpability. There is nothing in the record to indicate that the court heard and considered any evidence as to the most appropriate dispositional order in each case.

**[6]** With respect to restitution, we must again point out that reimbursing the victim for her financial loss seems to have been the overriding concern of everyone in these cases. When addressing the court with respect to restitution, the assistant district attorney, John Smith, said, "We do not contend that $1,000.00 is a fair pro-rata assessment of the total losses. The $1,000.00 was arrived at because that is the maximum amount that can be recovered in a civil law suit against parents who do not commit the acts but whose liability is contingent upon that of the child. The restitution where it's actually pro-rated would be much higher than that $1,000.00."

Manifestly, the limit of the parents' civil liability for damage "maliciously or willfully" done to property by a juvenile pursuant to G.S. 1-538.1, is not the proper criteria for determining the punishment to be imposed upon that juvenile found to be delinquent under G.S. 7A-649. The statement by the assistant district attorney is another example of the fact that the juveniles in these cases were prosecuted simply because they or their parents were unwilling or unable to pay $1,000 to Mrs. Radliff.

For the reasons stated, the adjudicatory and dispositional orders are vacated, and the judgments in these cases will be arrested.

Judgments arrested.

Judges JOHNSON and GREENE concur.

Judge GREENE concurring.

While I agree with the majority in almost every respect, I cannot join in the majority's statement that "[a]t common law, the court could not find Amanda Croom, age six, guilty beyond a reasonable doubt because a juvenile under age seven could not be charged with, found guilty of and punished for a criminal offense, because of the irrebuttable presumption that she was *doli incapax*." As Amanda Croom was six years old and thus irrebuttably presumed incapable of criminal intent, I agree that she could not be punished for a *criminal* offense. Given the definition of a "delinquent juvenile" as one "less than 16 years of age *who has committed a crime* . . .," N.C. Gen. Stat. Sec. 7A-517(12) (1986)

(emphasis added), the majority's dictum implies that the common law presumption of criminal incapacity precludes the juvenile court from adjudicating the delinquency of certain juveniles.

Any such implication by the majority is clearly erroneous. The common law presumption only shields a child from indictment and punishment for criminal offenses. An adjudication of delinquency does not arise from a criminal indictment. Disposition in a juvenile case is not punishment since the purpose of such disposition is "to design an appropriate plan to meet the needs of the juvenile." N.C. Gen. Stat. Sec. 7A-646 (1986). While the six-year-old in the instant case had an absolute defense to criminal prosecution, she could nevertheless be adjudicated delinquent in a juvenile proceeding. While the common law presumption limits the capacity of children to commit a criminal act, the legislature has determined in the Juvenile Code that a "criminal" act is a "delinquent" act when committed by a child between the ages of six through fifteen. In short, the Juvenile Code transforms the nature of the act itself.

Our courts have consistently held an adjudication of delinquency is not synonymous with determination of criminal guilt. In *State v. Burnett*, 179 N.C. 735, 740, 102 S.E. 711, 713 (1920), our Supreme Court stated "that in causes investigated and determined by the juvenile court, . . . [a child shall not] be denominated a criminal by reason of such adjudication, nor shall adjudication be denominated a conviction . . . ." In *In re Drakeford*, 32 N.C. App. 113, 115, 230 S.E. 2d 779, 780 (1977), this Court more recently reaffirmed its decisions that a juvenile proceeding is not a criminal prosecution and a finding of delinquency is not a criminal conviction. Therefore, while Amanda Croom's legal disability may have shielded her from criminal prosecution, her youth did not divest the juvenile court of jurisdiction to adjudicate her delinquency. On the contrary, her youth was the basis of the juvenile court's jurisdiction.

Accordingly, the implication of the majority's dictum erroneously limits the juvenile court's jurisdiction over cases involving children. However, as I agree that the lower court did not comply with the relevant juvenile statutes, I join with the majority in vacating the adjudicatory and dispositional orders and arresting the judgments.