CASWELL COUNTY, Plaintiff-Appellee v. JAMES and RAMONA HANKS, Defendant-Appellants

No. COA94-802

(Filed 17 October 1995)

**1. Animals, Livestock, or Poultry § 9 (NCI4th)— potentially dangerous dog—de novo hearing required in superior court**

In an action to declare a dog as potentially dangerous pursuant to N.C.G.S. § 67-4.1, the trial court erred by conducting only a *de novo* review of the existing record rather than a *de novo* hearing.

**Am Jur 2d, Animals §§ 96-99, 107-112.**

**2. Animals, Livestock, or Poultry § 9 (NCI4th)— potentially dangerous dog—statute not unconstitutionally vague and overbroad**

The definition of "potentially dangerous dog" in N.C.G.S. § 67-4.1(a)(2)c as a dog which has "approached a person when not on the owner's property in a vicious or terrorizing manner in an apparent attitude of attack" is not unconstitutionally vague and overbroad, since the statute does not attempt to regulate activity that the State is constitutionally forbidden to regulate, and the statute provides sufficient notice for defendants and others to determine what conduct is proscribed.

**Am Jur 2d, Animals §§ 96-99, 107-112.**

Appeal by defendants from order entered 25 February 1994 by Judge Anthony M. Brannon in Caswell County Superior Court. Heard in the Court of Appeals 28 August 1995.

On 24 November 1992, the health director of the Caswell County Health Department sent a notice to defendants that their dog, Ginger, a boxer, had been defined as "vicious" under Public Health Law Section 130A-200. The notice was based on three animal bite reports filed on behalf of three neighborhood children whom had either been scratched or pinched by Ginger on 15 July 1992, 16 July 1992, and 20 July 1992.

Defendants appealed the health director's determination to the Caswell County Animal Control Appellate Board (hereinafter "the Board"), which heard the appeal on 18 May 1993. The Board, consisting of the chairperson for the Caswell County Public Health Department and two members of the Board of Health, declared Ginger a "potentially dangerous dog" as defined in Chapter 67, Article 1A of the North Carolina General Statutes.

Pursuant to N.C. Gen. Stat. § 67-4.1(c), defendants appealed the Board's ruling to the Superior Court of Caswell County, stating as grounds for review the constitutionality of the statutes' definition of "potentially dangerous dog" and the denial of an opportunity to present certain evidence. Based on "an appeal *de novo* as provided in Chapter 67, Article 1A," the trial court made findings of fact and concluded that the statutory definition was constitutional and that the actions of defendants' dog arose to the level of a "legally apparent attitude of attack" under N.C. Gen. Stat. § 67-4.1(a)(2)c. Defendants appeal.

*No brief for plaintiff appellee.*

*Marianna R. Burt and Aida Fayar Doss for defendant appellants.*

ARNOLD, Chief Judge.

[1] Defendants contend that the trial court erred by conducting only a *de novo* review of the existing record rather than a *de novo* hearing. We agree.

N.C. Gen. Stat. § 67-4.1 provides the following procedures for determining whether a dog is potentially dangerous:

The county or municipal authority responsible for animal control shall designate a person or a Board to be responsible for determining when a dog is a "potentially dangerous dog" and shall designate a separate Board to hear any appeal. The person or

Board making the determination that a dog is a "potentially dangerous dog" must notify the owner in writing, giving the reasons for the determination, before the dog may be considered potentially dangerous under this Article. The owner may appeal the determination by filing written objections with the appellate Board within three days. The appellate Board shall schedule a hearing within 10 days of the filing of the objections. Any appeal from the final decision of such appellate Board shall be taken to the superior court by filing notice of appeal and a petition for review within 10 days of the final decision of the appellate Board. Appeals from rulings of the appellate Board shall be heard in the superior court division. *The appeal shall be heard de novo before a superior court judge sitting in the county in which the appellate Board whose ruling is being appealed is located.*

N.C. Gen. Stat. § 67-4.1(c) (1994) (emphasis added). In inquiring as to how to handle this *de novo* appeal, the trial judge indicated that "it look[ed] to [him] to be analogous to a *de novo* appeal from the District Court to the Superior Court in a criminal case," i.e., a completely new hearing on the matter. The judge, however, treated the appeal as one for *de novo* review of the existing record only, stating that the statute "[d]oes not say that the case has to be heard *de novo* before a Superior Court Judge."

The language of the statute in this case is mandatory, providing that the appeal to superior court "shall be heard de novo[.]" N.C. Gen. Stat. § 67-4.1(c). " 'The word "*de novo*" means fresh or anew; for a second time; and a *de novo* trial in appellate court is a trial had as if no action whatever had been instituted in the court below.' " *In Re Hayes*, 261 N.C. 616, 622, 135 S.E.2d 645, 649 (1964) (quoting *In Re Farlin*, 112 N.E.2d 736 (Ill. App. 1953)). A court empowered to hear a case *de novo* is vested with " 'full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court.' " *Id.* (quoting *Lone Star Gas Co. v. State*, 153 S.W.2d 681, 692 (Tex. 1941)). The plain language of N.C. Gen. Stat. § 67-4.1(c) therefore requires that the superior court must hear the case on its merits from beginning to end as if no hearing had been held by the Board and without any presumption in favor of the Board's decision. *See id.*

Rather than hearing the matter *de novo*, as prescribed in the statute, the trial court instead relied upon the evidence in the record compiled from the hearing before the Board without making inde-

pendent findings of fact. This evidence included a partially inaudible audio taped recording of the Board hearing, affidavits, and a videotape that was not given to the Board at the original hearing, but was apparently reviewed by the Board upon defendants' request for reconsideration. We hold that the court erred by failing to hear the matter pursuant to the statute and the principles set forth in this opinion.

[2] Defendants' second assignment of error is that the definition of "potentially dangerous dog" as set forth in N.C. Gen. Stat. § 67-4.1(a)(2)c. is unconstitutionally vague and overbroad. We disagree.

First, the overbreadth doctrine is not applicable because it was designed only to strike down statutes attempting to regulate activity that the State is constitutionally forbidden to regulate. *State v. Banks,* 295 N.C. 399, 245 S.E.2d 743 (1978). The definition at issue in this case states that a potentially dangerous dog is one which has "[a]pproached a person when not on the owner's property in a vicious or terrorizing manner in an apparent attitude of attack." N.C. Gen. Stat. § 67-4.1(a)(2)c. (1994). Defendants do not suggest that the State is constitutionally forbidden from regulating such activity. This simply is not an area where the State seeks to regulate activities "which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama,* 377 U.S. 288, 307, 12 L.Ed.2d 325, 338 (1964).

Furthermore, we find no merit in defendants' argument that the statute is unconstitutionally vague. Our Supreme Court has enunciated the principles of the vagueness doctrine as follows:

> "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met.

*In Re Burrus,* 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969), *aff'd by McKeiver v. Pennsylvania,* 403 U.S. 528, 29 L.Ed.2d 647 (1971) (citations omitted). Furthermore, the statute must be examined in light of the circumstances in each case, and defendants have the burden of

showing either that the statute provides inadequate warning as to the conduct it governs or is incapable of uniform judicial administration. *State v. Covington*, 34 N.C. App. 457, 238 S.E.2d 794 (1977), *disc. review denied*, 294 N.C. 184, 241 S.E.2d 519 (1978). After carefully examining the language of N.C. Gen. Stat. § 67-4.1(a)(2)c. in light of the facts of the instant case, we conclude that defendants have not met their burden, and the statute provides sufficient notice for defendants and others to determine what conduct is proscribed. *See In Re Burrus*, 275 N.C. 517, 169 S.E.2d 879.

Defendants' final assignment of error concerns the trial court's failure to remedy the refusal of the Board to permit certain evidence at the Board's hearing. In light of our decision to remand this case to the superior court for a *de novo* hearing, it is unnecessary to address defendants' argument.

In sum, we hold that the trial court erred by failing to conduct a *de novo* hearing pursuant to N.C. Gen. Stat. § 67-4.1(c), and therefore remand to the Superior Court of Caswell County with instructions to conduct a *de novo* hearing to determine whether defendants' dog is potentially dangerous as defined in the statute. Furthermore, the court is not confined to the evidence which was presented to the Board, but may hear any additional evidence.

Remanded.

Judges JOHNSON and MARTIN, Mark D., concur.