STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

Affirmed.

Judges GREENE and WALKER concur.

━━━━━━━━━━

STATE OF NORTH CAROLINA v. RICHARD CRABTREE, DANA CRABTREE, AND BERTHA GAMBLE

No. COA96-1208

(Filed 15 July 1997)

1. **Searches and Seizures § 111 (NCI4th)— bingo facility— search warrant—probable cause**

    Probable cause existed for the issuance of a warrant to search a beach bingo facility for illegal gambling equipment where an officer's affidavit stated that officers and volunteers played bingo at the facility and observed $50.00 prizes awarded for bingo and monetary prizes being paid to patrons playing slot machines.

    **Am Jur 2d, Searches and Seizures §§ 117 et seq.**

2. **Searches and Seizures § 141 (NCI4th)— search warrant— manner of execution—not general warrant**

    Officers did not convert a search warrant, which was supported by probable cause and issued pursuant to N.C.G.S. § 15A-256, into a general warrant, which does not specify the items to be searched for, by interviewing employees inside an illegal bingo operation when executing the search warrant; therefore, defendant owners' motion to suppress the evidence seized during the execution of the search warrant was properly denied.

    **Am Jur 2d, Searches and Seizures §§ 248 et seq.**

3. **Constitutional Law § 163 (NCI4th)— defendants not selectively prosecuted**

    There was no evidence that defendants who were prosecuted for violation of beach bingo laws and possession of illegal slot machines were selectively prosecuted.

    **Am Jur 2d, Constitutional Law §§ 735 et seq.; Criminal Law §§ 643 et seq., 831 et seq.**

**4. Gambling § 33 (NCI4th)— definition of "slot machine"— not unconstitutionally vague**

There was no validity to defendants' argument that N.C.G.S. § 14-306 provides an unconstitutionally vague definition of prohibited "slot machines" where the statute provides sufficient notice for defendants and others to determine what conduct is proscribed.

**Am Jur 2d, Gambling §§ 82 et seq.**

**Coin-operated pinball machine or similar device, played for amusement only or confining reward to privilege of free replays, as prohibited or permitted by antigambling laws. 89 ALR2d 815.**

**Paraphernalia or appliances used for recording gambling transactions or receiving or furnishing gambling information as gaming "devices" within criminal statute or ordinance. 1 ALR3d 726.**

**What constitutes gambling device within meaning of 15 USCS § 1171(a) so as to be subject to forfeiture under Gambling Devices Act of 1962 (15 USCS §§ 1171-1178). 83 ALR Fed. 177.**

**5. District Attorneys § 4 (NCI4th)— criminal docket—control—constitutional**

Statutes granting authority to the district attorney to control the criminal docket do not violate the due process clause.

**Am Jur 2d, Prosecuting Attorneys §§ 17 et seq.**

**Power of assistant or deputy prosecuting or district attorney to file information, or to sign or prosecute it in his own name. 80 ALR2d 1067.**

**Limitations on state prosecuting attorney's discretion to initiate prosecution by indictment or by information. 44 ALR4th 401.**

**6. Gambling § 33 (NCI4th)— slot machine—definition—jury instructions**

In a prosecution for the illegal possession of a slot machine, the trial court's instructions were a proper summation of the definition of "slot machine" contained in N.C.G.S. § 14-306 and

did not fail to allow the jury to determine whether a video game machine fit within any of the exceptions to the statutory definition.

**Am Jur 2d, Gambling §§ 82 et seq.**

**Coin-operated pinball machine or similar device, played for amusement only or confining reward to privilege of free replays, as prohibited or permitted by antigambling laws. 89 ALR2d 815.**

**Paraphernalia or appliances used for recording gambling transactions or receiving or furnishing gambling information as gaming "devices" within criminal statute or ordinance. 1 ALR3d 726.**

**What constitutes gambling device within meaning of 15 USCS § 1171(a) so as to be subject to forfeiture under Gambling Devices Act of 1962 (15 USCS §§ 1171-1178). 83 ALR Fed. 177.**

**7. Gambling § 21 (NCI4th)— beach bingo—felony charges— sufficient evidence**

There was substantial evidence to support felony beach bingo charges against defendants, the owners and manager of a beach bingo facility, where there was evidence tending to show that, although employees may have been instructed to collect a penny back from patrons who were given a $50.00 prize, defendants knew that paying $50.00 was illegal and that pennies were not always collected from such patrons. N.C.G.S. § 14-309.14(1).

**Am Jur 2d, Gambling §§ 17-19, 42.**

**8. Gambling § 21 (NCI4th)— beach bingo—requiring five bingos during same calling—not five games**

Requiring a beach bingo player to have four or five bingos during the same sequence of calling numbers does not convert it into five individual games so as to permit a prize in excess of $10.00.

**Am Jur 2d, Gambling §§ 17-19, 42.**

Appeal by defendants from judgments entered 2 May 1996 by Judge Orlando Hudson in Durham County Superior Court. Heard in the Court of Appeals 3 June 1997.

STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

*Attorney General Michael F. Easley, by Associate Attorney General Mark J. Pletzke, for the State.*

*Marvin Sparrow for defendant appellants.*

COZORT, Judge.

The defendants in this case were convicted of felonies pursuant to N.C. Gen. Stat. § 14-309.14 (1996 Cum. Supp.) for violating North Carolina beach bingo laws. Defendants were also convicted of possessing illegal slot machines as defined in N.C. Gen. Stat. § 14-306 (1993).

The State's evidence tended to show the following: in response to complaints from members of the Durham City and Durham County communities, Captain Richard Buchanan of the Durham County Sheriff's Department sent a letter to every beach bingo operation in Durham County, including the one owned and operated by defendants. The purpose of the letter was to inform beach bingo operators of reports of alleged violations of North Carolina beach bingo laws and of the Durham County Sheriff's Department's intention to investigate. Defendants Richard Crabtree and Dana Crabtree were the principal owners of Entertainment, Incorporated, which owned and operated Dana's Beach Bingo in Durham, North Carolina. Bertha Gamble was the head manager of Dana's Beach Bingo. Undercover investigators working with volunteers acting as agents of the Durham County Sheriff's Department, went to Dana's Beach Bingo on 23 June 1995, 14 July 1995, 3 August 1995, 9 August 1995, 17 August 1995 and 8 September 1995. On these occasions the investigators and volunteers observed numerous violations of North Carolina beach bingo laws. On 10 August 1995, Captain Buchanan obtained a search warrant to search defendants' bingo hall. The warrant authorized law enforcement officers to search defendants' bingo hall and seize evidence being used to operate illegal bingo games and illegal gambling operations. After the seizure, defendants acquired additional gambling equipment and continued to operate illegal bingo games and other illegal gambling operations. On 12 September 1995, another warrant was issued and the gambling equipment was seized.

Defendants Richard Crabtree and Dana Crabtree were each convicted of five felony counts in violation of N.C. Gen. Stat. § 14-309.14 and five counts of possessing illegal slot machines. Defendant Richard Crabtree received a minimum six months', maximum 8 months' suspended sentenced. He was placed on supervised proba-

tion for 24 months. As a condition of his probation he is not to operate a beach bingo game for a period of one year. Further, the video game machines are to be destroyed, except for one which is to be kept for the Sheriff's Department Training Division. Defendant Dana Crabtree received the same sentence with the same probationary condition. Bertha Gamble was convicted of one felony count in violation of N.C. Gen. Stat. § 14-309 and one count of possessing an illegal slot machine. Defendant Bertha Gamble received a minimum four months', maximum five months' suspended sentence. She was placed on supervised probation for 12 months, and as a condition of her probation she is not to operate a beach bingo game for a period of one year. From these convictions, defendants appeal.

Defendants first argue that the trial court erred by denying their motion to suppress evidence. First, they argue that the affidavits supporting the applications for the search warrants were insufficient to establish probable cause. Secondly, they argue that the search warrants were general warrants because of the manner in which the warrants were executed. We disagree.

[1] We first address the sufficiency of the affidavits given in support of the search warrants. Constitutional and statutory provisions require that a search warrant be based on probable cause. U.S. Const. amend. IV; N.C. Gen. Stat. § 15A-244 (1988). *See State v. Riggs*, 328 N.C. 213, 400 S.E.2d 429 (1991). In general, the standard for a court reviewing the issuance of a search warrant is " 'whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.' " *State v. Ledbetter*, 120 N.C. App. 117, 121, 461 S.E.2d 341, 343 (1995) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 728, 80 L. Ed. 2d 721, 724 (1984)). In *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984), the North Carolina Supreme Court stated:

"The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."

*Id.* (citation omitted); *State v. Smothers*, 108 N.C. App. 315, 317, 423 S.E.2d 824, 826 (1992). " '[R]esolution of doubtful or marginal cases

in this area should be largely determined by the preference to be accorded to warrants.'" *State v. Crawford*, 104 N.C. App. 591, 594, 410 S.E.2d 499, 501 (1991) (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689 (1965)).

Pursuant to N.C. Gen. Stat. § 15A-244 (1988), applications for search warrants must be in writing upon oath or affirmation and contain the following:

(1) The name and title of the applicant; and

(2) A statement that there is probable cause to believe that items subject to seizure under G.S. 15A-242 may be found in or upon a designated or described place, vehicle, or person; and

(3) Allegations of fact supporting the statement. The statements must be supported by one or more affidavits particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched; and

(4) A request that the court issue a search warrant directing a search for and the seizure of the items in question.

"If the affidavit is based on hearsay information, then it must contain the circumstances underlying the informer's reliability and the basis for the informer's belief that a search will uncover the objects sought by the police." *Crawford*, 104 N.C. App. at 596, 410 S.E.2d at 501 (citation omitted). "The officer making the affidavit may do so in reliance upon information reported to him by other officers in the performance of their duties." *State v. Horner*, 310 N.C. 274, 280, 311 S.E.2d 281, 286 (1984) (citing *State v. Vestal*, 278 N.C. 561, 576, 180 S.E.2d 755, 765 (1971), *cert. denied*, 414 U.S. 874, 38 L. Ed. 2d 114 (1973)).

The affidavits in the present case were provided by Detective Buchanan. The Durham County Sheriff's Department received complaints regarding defendants' bingo practices. Officers and volunteers acting as agents for the Durham County Sheriff's Department went to Dana's Beach Bingo on 23 June 1995, 14 July 1995, 3 August 1995, 9 August 1995, 17 August 1995 and 8 September 1995. On these dates, the officers and the volunteers played bingo and observed payoffs for bingo games and for slot machines. Specifically, they observed bingo prizes greater than $10.00 and prizes in the amount of $50.00 being paid to patrons. Additionally, monetary prizes were being paid out to

patrons for playing the slot machines. Detective Buchanan gave the affidavits in support of the search warrants in reliance on observations from investigating officers and the volunteers. Based on these observations, we hold that the magistrate had a substantial basis to conclude that illegal gambling equipment would be found at Dana's Beach Bingo and that probable cause existed to issue the warrants.

[2] We now address defendants' argument that the manner in which the search warrants were executed converted the warrants into general warrants. Defendants assert that the searches authorized by the warrants were rendered unreasonable and unconstitutional because of the manner of their execution. Defendants argue that officers executing the warrants detained and questioned persons present at Dana's Beach Bingo when the warrants were served, thus rendering the warrant unreasonable and converting the warrant into a general warrant. Therefore, defendants contend, all evidence seized as a result of the warrant should have been suppressed. We disagree.

A general warrant is one that does not specify the items to be searched for or the persons to be arrested and is not supported by a showing of probable cause that any particular crime has been committed. *State v. Richards*, 294 N.C. 474, 491-92, 242 S.E.2d 844, 855 (1978). Where an officer who is executing a valid search for one item seizes a different item, the courts must be sensitive to the danger that officers may enlarge their specific authorization furnished by a warrant or an exigency into the equivalent of a general warrant to rummage and seize at will. *State v. Beveridge*, 112 N.C. App. 688, 695-96, 436 S.E.2d 912, 916 (1993), *aff'd*, 336 N.C. 601, 444 S.E.2d 223 (1994).

> An officer executing a search warrant is authorized by statute to detain persons present on the premises, G.S. 15A-256, and to frisk those present for weapons if he reasonably believes that there is a threat to the safety of himself or others. G.S. 15A-255. These provisions are clearly designed to enable officers to ensure their safety and to prevent possible suspects from fleeing or destroying evidence.

*State v. Jones*, 97 N.C. App. 189, 196, 388 S.E.2d 213, 217 (1990).

Here, Captain Buchanan testified that he instructed the officers to interview the employees who were inside Dana's Beach Bingo when they executed the search warrants. Having determined that the warrants in question are supported by probable cause, we now hold

that the officers acted within their authority pursuant to N.C. Gen. Stat. § 15A-256 (1988) when executing the warrants. The manner in which they executed the search warrants did not convert them into general search warrants. Defendants' motion to suppress was properly denied.

[3] Defendants next argue that they were selectively prosecuted. We disagree. "To maintain a defense of selective prosecution, a defendant must show more than simply that discretion has been exercised in the application of a law resulting in unequal treatment among individuals; he must show that in the exercise of that discretion there has been intentional or deliberate discrimination by design." *In Re Register*, 84 N.C. App. 336, 341, 352 S.E.2d 889, 892 (1987).

> "The generally recognized two-part test to show discriminatory selective prosecution is (1) the defendant must make a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not; (2) upon satisfying (1) above, he must demonstrate that the discriminatory selection for prosecution was invidious and done in bad faith in that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights."

*Majebe v. North Carolina Board of Med. Exam.*, 106 N.C. App. 253, 260-61, 416 S.E.2d 404, 408, *dismissal allowed and disc. review denied*, 332 N.C. 484, 421 S.E.2d 355 (1992) (citation omitted).

In the present case, defendants base their argument on the following testimony given by Captain Buchanan.

Q. How did you decide to bring charges against the Crabtrees?

A. How did I decide?

Q. Yes.

A. I sit down in the District Attorney's office and discussed the case. I don't make decisions of that nature.

Q. Did you suggest to them that they bring charges against any other bingo operator?

A. The investigation is still ongoing.

STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

Q. Well, so far have you suggested that they bring any charges against any other bingo operators?

A. We are not in a position yet to bring additional charges.

Q. Did you give a television interview regarding bingo?

A. Yes, I did.

Q. And did you say in that that you were concentrating on the Crabtrees right now?

A. I don't recall saying I was concentrating on the Crabtrees. Although we have been in there much more than anywhere else, because they continue to openly violate, which draws us back to their establishment.

Q. You don't remember whether you said you were concentrating on the Crabtrees now?

A. No, sir I don't. I didn't see the interview.

Q. Do you remember whether you said that you were going to stay with the Crabtrees' case for two years if it took that?

A. No, sir.

Q. You don't remember?

A. No, I wouldn't have said that.

Q. And do you remember whether before you said that you brought charges against the Crabtrees because they were open and blatant in their operation?

A. They are open and blatant in their operation. That's why charges were brought.

Defendants failed to present evidence to support their argument of selective prosecution. Defendants did not show that the Durham County Sheriff's Department's exercise of discretion as to which Bingo parlor to investigate was intentional or deliberate or discriminatory by design. We find no error.

[4] Defendants' third assignment of error is that the definition of "slot machine" as set forth in N.C. Gen. Stat. § 14-306 (1993) is unconstitutionally vague. We disagree.

Our Supreme Court has enunciated the principles of the vagueness doctrine as follows:

" 'A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements are fully met."

*Caswell County v. Hanks*, 120 N.C. App. 489, 492, 462 S.E.2d 841, 843 (1995) (quoting *In Re Burrus*, 275 N.C. 517, 531, 169 S.E.2d 879, 888 (1969), *aff'd by McKeiver v. Pennsylvania*, 403 U.S. 528, 29 L. Ed. 2d 647 (1971) (citations omitted)). "Furthermore, the statute must be examined in light of the circumstances in each case, and defendants have the burden of showing either that the statute provides inadequate warning as to the conduct it governs or is incapable of uniform judicial administration." *Id.* at 492-93, 462 S.E.2d at 843-44.

N.C. Gen. Stat. § 14-306, entitled "Slot machine or device defined," provides:

Any machine, apparatus or device is a slot machine or device within the provisions of G.S. 14-296 through 14-309, if it is one that is adapted, or may be readily converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated in such manner that the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value, or any check, slug, token or memorandum, whether of value or otherwise, or which may be exchanged for any money, credit, allowance or any thing of value, or which may be given in trade, or the user may secure additional chances or rights to use such machine, apparatus or device; or any other machine or device designed and manufactured primarily for use in connection with gambling and which machine or device is classified by the United States as requiring a federal gaming device tax stamp under applicable provisions of the Internal Revenue Code. This definition is intended to embrace all slot machines and similar devices except slot

STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

machines in which is kept any article to be purchased by depositing any coin or thing of value, and for which may be had any article of merchandise which makes the same return or returns of equal value each and every time it is operated, or any machine wherein may be seen any pictures or heard any music by depositing therein any coin or thing of value, or any slot weighing machine or any machine for making stencils by the use of contrivances operated by depositing in the machine any coin or thing of value, or any lock operated by slot wherein money or thing of value is to be deposited, where such slot machines make the same return or returns of equal value each and every time the same is operated and does not at any time it is operated offer the user or operator any additional money, credit, allowance, or thing of value, or check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for money, credit, allowance or thing of value or which may be given in trade or by which the user may secure additional chances or rights to use such machine, apparatus, or device, or in the playing of which the operator does not have a chance to make varying scores or tallies.

The definition contained in the first paragraph of this section and G.S. 14-296, 14-301, 14-302, and 14-305 does not include coin-operated machines, video games, and devices used for amusement. Included within this exception are pinball machines, video games, and other mechanical devices that involve the use of skill or dexterity to make varying scores or tallies and which, in actual operation, limit to eight the number of accumulated credits or replays that may be played at one time and which may award free replays or paper coupons that may be exchanged for prizes or merchandise with a value not exceeding ten dollars ($10.00), but may not be exchanged or converted to money.

Defendants argue the statute is unconstitutionally vague for the following reasons: (1) the first sentence is a broad description which includes any machine into which coins or objects may be inserted; (2) the second sentence states that the definition embraces "all slot machines and similar devices," carving out a vast exception which excludes vending machines; (3) the third and fourth sentences in the second paragraph create another exception which excludes "coin-operated machines, video games, and devices used for amusement. Included within this exception are pinball machines, video games, and other mechanical devices that involve the use of skill or dexter-

ity . . . ." Defendants argue that the fourth sentence is subject to two interpretations. The first interpretation is that the phrase "used for amusement" may be seen to modify only the word "devices," which means that all video games are excluded from the definition of slot machines. The second interpretation is that the phrase "that involve the use of skill or dexterity" may be read as applying only to "other mechanical devices" or apply to "pinball machines, video games, and other mechanical devices." This interpretation would allow video games to be considered slot machines but leave the term amusement undefined.

After carefully examining the language of N.C. Gen. Stat. § 14-306 in light of the facts of the instant case, we conclude that defendants have not met their burden. We hold the statute provides sufficient notice for defendants and others to determine what conduct is pro-scribed. *See In Re Burrus*, 275 N.C. 517, 169 S.E.2d 879 (1969).

[5] Defendants' fourth argument is that the statutory grant of author-ity to the district attorney to control the criminal docket violates the due process clause. Our courts have previously addressed this issue, finding statutes investing district attorneys with calendaring author-ity to be constitutional. *Simeon v. Hardin*, 339 N.C. 358, 375-78, 451 S.E.2d 858, 869-70 (1994).

[6] Defendants' fifth assignment of error is that the trial court's instructions to the jury regarding the definition of slot machine were inconsistent with the statute, and the instructions to the jury widened the scope of the statutory prohibition, failing to allow the jury to determine whether the video game machines fit within any of the exceptions of the statutory definitions. We disagree.

The trial court gave the following instruction:

All right. Now, the defendant has been accused of possessing an illegal slot machine. Now, I charge that for you to find the defendant guilty of possessing an illegal slot machine, the State must prove two things beyond a reasonable doubt. First, that the defendant possessed an illegal slot machine. An illegal slot machine is one that is designed, not to produce for or give to the person who places a coin or money or the representative of either in it, the same return in market value each and every time such machine is operated.

\* \* \* \*

STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

And second, the defendant must have possessed the illegal slot machine for the purpose that it be operated as an illegal slot machine. In this regard, members of the jury, a video game machine would be an illegal slot machine if you find beyond a reasonable doubt that the defendant possessed it and that he possessed it for the purpose that it be operated as an illegal slot machine.

Having already determined that the statutory definition of "slot machine" is capable of only one interpretation, we hold that the trial court's instructions to the jury are a proper summation of the definition contained in N.C. Gen. Stat. § 14-306, and we find no error.

[7] Defendants' sixth assignment of error is that the trial court erred in failing to dismiss all felony counts regarding beach bingo prizes because the State's evidence showed that it was the intent of the owners and manager to pay prizes of $49.99 and that the owners instructed all employees in that regard. Defendants argue that they cannot be held culpable for employees' failure to follow instructions. We disagree.

In ruling on a motion to dismiss, the trial court is to consider the evidence in the light most favorable to the State and to give the State the benefit of every reasonable inference which may be drawn from that evidence. *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). The trial court must determine whether there is substantial evidence of each element of the charged offense. *State v. Vines*, 317 N.C. 242, 253, 345 S.E.2d 169, 175 (1986). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "[I]f the State has offered substantial evidence against defendant of every essential element of the crime charged[,]" defendants' motions to dismiss must be denied. *State v. Porter*, 303 N.C. 680, 685, 281 S.E.2d 377, 381 (1981). Pursuant to N.C. Gen. Stat. § 14-309.14(1), "[a]ny person offering a prize of fifty dollars ($50.00) or greater [for a beach bingo game] is guilty of a Class I felony."

At trial, the State offered the testimony of Wade Brown. Wade Brown was employed by Dana's Beach Bingo for three years and was employed there during the investigation. He was initially a member of the floor staff before being promoted to manager. His testimony directly implicates defendants and shows they were aware that $50.00 payouts occurred without collecting a penny from each winning patron. He testified to the following.

Q. And what did you have to do to win one game at Dana's Beach Bingo?

A. Five bingoes on one card.

Q. And how much were you paid for getting five bingoes on one of those sheets?

A. $50—$49.99.

Q. Could you break the prize up?

A. No.

Q. Were there any—was there any way a person could get two or three bingoes and get paid?

A. No, not if we said it was on five cards. If it said it on two or three cards, then they hit bingo on two or three cards.

Q. Did you all announce the amount as the game was being played?

A. No, usually just say five cards or so.

Q. Why did you stop doing that?

A. We stopped saying 50s.

Q. Why did you stop saying that?

A. Illegal.

Q. Are these things that the Crabtrees and Ms. Gamble were aware of?

A. Yes.

\* \* \* \*

Q. Mr. Brown, after the search warrant was executed on August the 10th, did operations at Dana's Beach Bingo change?

A. Yes, it did.

Q. How did it change?

A. Well, we didn't announce no more 50s anymore.

Q. Why not?

A. Against the law. We just say five cards and people still knew what we meant by five cards.

STATE v. CRABTREE

[126 N.C. App. 729 (1997)]

Q. Did you still keep paying $50 prizes?

A. We didn't.

Q. What's this about giving a penny back?

A. Makes it $49.99.

Q. Why did you do that?

A. It was our understanding, first, it was legal to play a 49.99 game.

Q. Did you always give the penny back?

A. No.

Q. After the August 10th raid, did you know it was illegal to pay $50?

A. Yes.

Q. Did you continue to pay $50?

A. Yes.

Q. On August 17th, was Dana's Beach Bingo paying prizes of $50 or more?

A. Yes.

Q. Who told you to get a penny?

A. Who told us?

Q. Who told you?

A. Mainly Richard.

From this testimony the jury could have concluded that, while Richard Crabtree may have instructed the employees to collect a penny back from patrons, he, Dana Crabtree, and Bertha Gamble were aware that paying $50.00 for games was illegal and that pennies were not always collected from the patrons. Additionally, the State offered the testimony of Detective Pascal. He testified that he witnessed $50.00 payouts for bingo games on 14 July 1995 and 3 August 1995. Sue Brownell, one of the volunteers who went to Dana's Beach Bingo with Detective Crumpler on 17 August 1995, testified that she won a $50.00 bingo game and did not pay back the penny. Detective Crumpler also won a $50.00 game on 3 August 1995 and was not required to pay a penny back. All three defendants were in atten-

dance at Dana's Beach Bingo on 3 August 1995. We hold there was substantial evidence from which the jury could have concluded that defendants, as the owners and the manager of Dana's Beach Bingo, knew about the $50.00 payouts and the failure to collect pennies from patrons. We hold the trial court properly denied defendants' motion to dismiss as there was substantial evidence to support the felony beach bingo charges.

[8] Defendants' seventh assignment of error is that the trial court should have dismissed all beach bingo counts for insufficient evidence. Defendants argue that the combination of two to five bingo prizes in a single calling of numbers did not render the $10.00 per bingo prize illegal. We disagree.

Pursuant to N.C. Gen. Stat. § 14-309.14(1), an offering of a beach bingo prize greater than $10.00 but less than $50.00 is a misdemeanor, while an offering of a prize of $50.00 or greater is a Class I felony. In addition to the evidence set forth above, defendants sponsored four-on-one games for $40.00 and five-on-one games for $50.00. Testimony from Paula Gullie, one of the volunteers, shows that Dana's Beach Bingo offered four-on-one games on 23 June 1995 and $40.00 was paid out. Detective Pascal witnessed five-on-one games resulting in a $50.00 payout on 14 July 1995 and 3 August 1995. Requiring a player to have four or five bingos during the same sequence of calling numbers merely extends the single game and does not convert it into five individual games. The trial court properly denied the motion to dismiss all beach bingo counts for insufficient evidence.

No error.

Judges MARTIN, Mark D., and TIMMONS-GOODSON concur.